ESTATE OF BERNARD E. DENZER, ALAN R. DENZER, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62141.    Filed November 15, 1957.

238

*Milton L. Rosenberg, Esq.*, for the petitioner.
*John F. Walsh, Esq.*, for the respondent.

OPINION.

MULRONEY, *Judge:* Respondent determined a deficiency in estate tax of petitioner estate in the sum of $18,132.14. The sole question in the case is whether certain trust property, the income of which was payable to decedent for his life, should be included in his estate under section 811 (c) (1) (B) of the Internal Revenue Code of 1939, on the ground that he had made a "transfer" of such property in trust and retained a life income.

All of the facts are stipulated and are so found. Alan R. Denzer, residing in White Plains, New York, is the executor of the estate of his deceased father, Bernard E. Denzer, and he filed the estate tax return for said estate in the office of the district director of internal revenue, Upper Manhattan District, New York, New York.

On March 24, 1921, T. Richard Denzer, the father of decedent, executed a written instrument of trust, naming the National City Bank of New York as trustee. The bank accepted the trust and received the securities transferred by the settlor to the trust. The trust instrument reserved the income to settlor for his life, and upon his death, the income was to be applied to the use of his wife during the life of their son, Bernard E. Denzer (decedent herein), with specified remainders over.

In article Fourth of the trust instrument it was provided that settlor, "with the consent of the Trustees, may, by an instrument in writing under his hand and seal or by his Last Will and Testament, alter or modify this agreement in any respect, provided, however, that such alteration or modification does not extend the trust term beyond the lives of the party of the first part [settlor] and the said Bernard E. Denzer."

On April 25, 1922, the settlor, by a written instrument, altered and modified the trust instrument so that the income after the settlor's death would be paid to his son, Bernard, during his life and upon his son's death the principal would be paid over to Bernard's children and the lineal descendants of any deceased child of Bernard. This instrument also modified article Fourth of the original agreement to read, in part, as follows:

The party of the first part [settlor], and, upon his death, his son, the said Bernard E. Denzer, with the consent of the Trustee, may, by an instrument in writing under his hand and seal, alter or modify this agreement in any respect, provided, however, that such alteration or modification does not extend the trust term beyond the lives of the party of the first part and the said Bernard E. Denzer.

The foregoing alteration and modification of the trust agreement by the settlor was consented to in writing by the trustee, the National City Bank of New York, on the same date.

On September 11, 1929, the trust was altered and modified by the settlor so as to substitute the City Bank Farmers Trust Company as successor trustee in the place of the National City Bank of New York.

On February 5, 1930, the settlor again modified the disposition provisions of the trust agreement so as to provide as follows:

Upon the death of the party of the first part to apply the income thereof to the use of Bernard E. Denzer, son of the party of the first part, during his life, and upon his death to convey, transfer and pay over the principal of said trust fund to and among such persons and in such amounts or proportions as the said Bernard E. Denzer may by his last Will and Testament appoint, and to convey, transfer and pay over so much of the principal of said trust fund as may not have been effectively so appointed to and among the lineal descendants of said Bernard E. Denzer then living in equal shares per stirpes, or in default of such lineal descendants to and among those persons and in those proportions in which my personal property would have been distributable if I had then died intestate and a resident of the State of New York.

There were some other alterations and modifications made by the settlor, not of interest here. Settlor died June 1, 1938, and at that time the trust with its several modifications provided that the income which had been payable to settlor during his life, would then be paid to his son, Bernard, for life, and upon the death of Bernard it would be paid over in such manner as Bernard would appoint in his last will and testament. On the failure of Bernard to appoint, the principal was to go to Bernard's lineal descendants, and in default of such lineal descendents, then to the heirs at law and next of kin of the settlor.

On March 28, 1940, Bernard E. Denzer delivered his instrument in writing to the bank trustee in which he quoted article Fourth of the trust instrument as modified by the modification of April 25, 1922, wherein he, with the consent of the trustee, was given the right to alter or modify the trust agreement. The instrument he delivered to the bank went on to say:

Pursuant to the power given to me by the above quoted provisions of said trust agreement, as amended as aforesaid, I, the undersigned Bernard E. Denzer, do hereby alter and modify said trust agreement so as to provide that I shall forthwith have the power to revoke and terminate said trust agreement and the trust thereby created and to direct you to transfer, pay over and deliver to me the property constituting the principal of said trust fund, free and discharged of said trust; and pursuant to said provisions of said trust agreement as hereinbefore altered and modified, I, the undersigned Bernard E. Denzer, do also hereby revoke and terminate said trust agreement as heretofore amended and the trust thereby created, and do hereby direct that you pay over, transfer and deliver to me the property constituting the principal of said trust fund, free and discharged of said trust, after the settlement of the account of The

National City Bank of New York, as trustee, and of your account, as Successor Trustee, as aforesaid, and the deduction from said trust fund of all proper commissions, fees, charges and expenses in connection therewith.

I hereby request that you give your consent in writing to the foregoing alteration and modification of said trust agreement and to the foregoing revocation thereof.

In response to the above, the bank trustee on March 29, 1940, executed and delivered an instrument which stated, in part, as follows:

[The successor trustee] hereby consents to the alteration and modification of said trust agreement and the revocation thereof and of the trust created thereby contained in an instrument executed by Bernard E. Denzer, and bearing date the 28th day of March, 1940, subject, however, to a determination being made by the Supreme Court of the State of New York in an action to be brought therein that the undersigned, as such successor trustee, may properly give its consent thereto.

On April 10, 1940, the bank trustee commenced a proceeding in the Supreme Court, New York County, naming Bernard, individually and as executor, and Bernard's two children as defendants. The complaint set forth the material facts as outlined above and alleged that Bernard, by the instrument of March 28, 1940, "purported to alter and modify said trust agreement so as to provide that he should have the right to revoke the same and to direct the delivery to him of the property constituting the principal of said trust fund, free and discharged of said trust, * * *." The complaint stated that the trustee bank "while entirely willing to consent to said amendment and modification of said agreement and said revocation thereof by Bernard E. Denzer, if he may legally so alter and modify said agreement and so revoke the same, was advised by counsel that there was doubt concerning the matter, and accordingly has executed a consent, dated March 29, 1940, to such alteration, modification and revocation, conditioned upon a determination being obtained, by this court, in an action to be brought for that purpose, among others, that it may properly give such consent." The prayer of the complaint asked the court to "construe said trust agreement and said amendments thereto and determine whether the defendant, Bernard E. Denzer, has the right to revoke said trust agreement and the trust created thereby, with the consent of said successor trustee, and whether the plaintiff, City Bank Farmers Trust Company, has the right to give its consent to a revocation thereof * * *."

Bernard E. Denzer answered the complaint as executor and in his individual capacity, the answer amounting to a general denial. Bernard's wife, Dorothy, later became a party defendant and she and their adult daughter filed answers later on in the proceedings which were much the same; the prayers of said answers each asking that the action be settled and compromised irrevocably and unconditionally in accordance with the terms of a compromise agreement "hereto annexed,"

and that all necessary acts and things to effect a prompt settlement and compromise be done. The other defendant, Bernard's minor son, appeared by a guardian *ad litem*, who denied that he had knowledge or information sufficient to form a belief.

The above proceeding was never litigated through to a decision on the merits but was resolved by the parties entering into a settlement and compromise agreement. This was the settlement and compromise agreement attached to the answers of Bernard's wife and daughter and it was also attached to and approved in the later report of the guardian *ad litem*. The settlement and compromise agreement provided that a decree in the form attached to the agreement be entered in the action. That decree was signed by the court on August 5, 1940. The compromise agreement which was signed by all parties or their representatives and the decree generally provided that the trustee pay to Bernard, discharged of any trust, one-half of the remaining principal of the trust, and Bernard was to execute and deliver to the trustee two instruments in the form annexed. The first instrument (marked "Exhibit A") was addressed to the bank and it constitutes a written withdrawal of Bernard's letter to the bank of March 28, 1940, in which he requested trustee's consent to a revocation of the trust. The second instrument (marked "Exhibit B") was also addressed to the bank trustee in which Bernard "pursuant to the power conferred upon me by said trust" modified and altered the trust, so as to provide that upon his death the trust property would go to his lineal descendants (instead of to those Bernard would appoint in his will) and to further provide that Bernard would have no right to further modify this disposition, and no right to revoke or terminate the trust and no right to alter or modify the agreement so as to provide for its revocation. The court approved the compromise agreement and Bernard executed the two instruments in which he withdrew his earlier letter of revocation and altered and modified the trust as set forth in Exhibit B referred to.

Bernard died August 17, 1953, and his son, as executor of his estate, did not include any of the trust property in his estate tax return. Respondent determined a deficiency of estate tax liability in the sum of $18,132.14. This determination included additions to the value of the net estate in the sum of $138,253.80. Of this latter sum, $137,539.23 represents the value of the property in the trust (after one-half had been turned over to Bernard in the settlement of the aforementioned suit) which respondent stated, in the deficiency notice, was the subject of a transfer in trust made by decedent (Bernard), under which he retained the right to income for his life, and was therefore a part of decedent's gross estate under the provisions of section 811 (c) (1) (B) of the Internal Revenue Code of 1939. This latter portion of the deficiency is all that is in controversy here.

Respondent's main argument is that the trust was effectively revoked by the acts of decedent and the trustee in March 1940 so that the execution of the instruments in August 1940 relating to one-half of the property which had composed the corpus of the original trust, constituted a "transfer" by the decedent of his property in which he retained the income for life.

Respondent argues, and we think correctly, that a settlor can grant the power to revoke to a beneficiary (Restatement, Trusts sec. 334, comment e), and the unlimited power to alter or modify a trust is the power to revoke it (Restatement, Trusts sec. 331, comment h; 3 Scott, Trusts sec. 331.2, p. 2416 (2d ed. 1956)). It is also true, as respondent points out, that where the power to alter or modify, and thus revoke, is only to be exercised with the consent of the trustee, that consent must be secured to effect a revocation. 3 Scott, Trusts sec. 330.9 (2d ed. 1956); Restatement, Trusts sec. 330. It is respondent's whole argument that consent of the trustee was given here by the trustee's letter of March 29, 1940.

We do not construe the trustee's letter of March 29, 1940, as the necessary trustee's consent to decedent's written modification and revocation. It starts out as a consent to the alteration and modification and revocation of the trust but then states the consent is "subject, however" to a court determination that it could properly consent thereto, which determination was never secured. Certainly the parties did not consider the trust revoked upon delivery of the March 29, 1940, letter to decedent. The trust property was not turned over to decedent. Instead the trustee brought the action in the New York Supreme Court to which its "consent" was made "subject" in the March 29, 1940, letter. This trust had been altered and modified many times by the settlor under the same article Fourth that decedent was purporting to act, and in each instance the trustee had given his written unqualified consent. The March 29 letter was not the necessary unqualified consent which the trust agreement required before a modification would be effective. In substance, it was a withholding of consent until sanctioned by judicial decree "in an action to be brought." We hold the actions of decedent and the trustee on March 28 and 29, 1940, did not effect a termination of the trust of March 24, 1921.

Respondent makes the alternative argument that the execution of the compromise agreement and the subsequent execution of the trust agreements by the decedent constituted the establishment of a new trust, with new interests, of which the decedent was the grantor. Respondent's proposition seems to be that where all the parties in interest join in a transaction whereby new interests are created, then all such parties may be deemed grantors of such new interests. However, even if we assume the validity of this argument as a legal

proposition, we are convinced, after a careful analysis of the changes in the trust made here by the parties, that such argument is inapplicable here.

. The two instruments which decedent executed under the compromise agreement were the withdrawal of a revocation instrument of March 28, 1940 (Exhibit A), and an amendment which, in effect, relinquished his testamentary powers of appointment and further powers to modify, after naming the same gifts as to the remainder of the trusts as would have resulted in default of his exercise of the power to modify or make testamentary disposition (Exhibit B). If any new trust of which decedent was grantor was created, it would have to be under Exhibit B, attached to the compromise agreement. Our concern here, of course, is only with that portion of the old trust which remained in existence. Petitioner merely relinquished his testamentary power of appointment and his power to modify over half of the original trust corpus, but only after he had created vested interests in this remaining portion of the trust. We do not think that the decedent, by creating these vested interests through the exercise of his power to modify, can be said to have made transfers of anything, since the beneficiaries named under his power to modify were the very same beneficiaries who would have taken in the event this power were never exercised by decedent. See *Rogers' Estate* v. *Helvering*, 320 U. S. 410; *Helvering* v. *Grinnell*, 294 U. S. 153; *Edith Evelyn Clark*, 47 B. T. A. 865. But even if we assume that a transfer were made, it could hardly be argued that a life interest was reserved by the decedent in connection with such transfer. Decedent's life interest in a remaining half of the trust was unchanged. The agreements of 1940 did not touch this but merely left it intact as it existed under the terms of the trust set up by the original settlor. To say that the decedent made a transfer here by naming these beneficiaries, through the exercise of his donated power to modify, and then reserved a life interest in himself in conjunction with such transfer, is to create a fiction.

We think that the parties here merely succeeded in preserving the old trust, reduced to half of its former size, with the decedent surrendering his powers to appoint and to modify, but keeping intact his life interest in the remaining trust. The compromise agreement was the settlement of a claim against the trust. It effectively extinguished a threat of a possible destruction of the entire trust. The very purpose of the compromise agreement was not the destruction of the trust but its preservation.

We hold no new trust with decedent as grantor was created by the compromise agreement and decedent's execution of instruments thereunder. The old trust continued, reduced by one-half of its corpus, with the same beneficial interests as would result from un-

exercised donated power. The value of the corpus of the trust was not includible in decedent's estate.

*Decision will be entered under Rule 50.*