THE UNION COMMERCE BANK, TRANSFEREE, PETITIONER, *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93381.  Filed March 22, 1963.

---

[6] See footnote 3, *supra*.

[7] Sec. 29.117–11(b), Regs. 111.

974

*Warren E. Hacker, Esq.*, for the petitioner.
*Clarence C. Roby, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge:* Respondent determined for assessment against petitioner the amount of $190,811.11, plus interest as provided by law, constituting petitioner's liability as trustee-transferee of property of Ethel M. Kolb, transferee of property of the estate of Justina C. Baker, Cleveland, Ohio, for a deficiency in estate tax.

The errors assigned are as follows:

(a) Respondent erred in determining that the decedent, Justina C. Baker, was at her death possessed of an undivided one-half vested interest in a trust under the will of Ethel F. Kaufman.

(b) Respondent erred in including any part of the property of said trust in the gross estate of the decedent, Justina C. Baker, for estate tax purposes.

(c) Respondent erred in determining that the value of the property of said trust at the applicable valuation date was $1,110,965.40.

(d) Respondent erred in failing to allow as a deduction in determining the taxable estate of the decedent, Justina C. Baker, the amount of Federal gift tax for the calendar year 1941 and interest thereon which, consistent with respondent's theory, had accrued and was indebtedness of and a claim against the estate of the decedent at her death.

(e) Respondent erred in failing to allow as deductions in determining the taxable estate of the decedent, Justina C. Baker, amounts representing expenses incurred and paid in administering the property in the trust under the will of Ethel F. Kaufman, deceased.

Assignment (c) has been resolved in the stipulation of facts.

The facts were all stipulated and are so found.

Petitioner, the Union Commerce Bank, as trustee under an agreement with Ethel Baker Kolb (sometimes referred to as Ethel M. Kolb) grantor, dated March 13, 1956, is liable as transferee of property of Ethel Baker Kolb, transferee of property of the estate of Justina C. Baker, deceased, for a deficiency, if any, in Federal estate tax (including interest) of the estate of Justina C. Baker, deceased, to the extent of $336,378.66.

Justina C. Baker, a widow, hereinafter sometimes referred to as the decedent, died testate on January 27, 1956, at the age of 98, a resident of Cuyahoga County, Ohio, survived by her daughter, Ethel Baker Kolb. A Federal estate tax return for her estate was filed with the district director of internal revenue for the Cleveland district of Ohio on April 26, 1957. In such return an election was made under section 2032, I.R.C. 1954, to value the estate in accordance with the alternate valuation provisions in the Code. The return showed a gross estate of $417,935.48, a taxable estate of $351,077.89, and a net estate tax of $90,890.43, which latter amount was paid to the district director with the return.

Ethel F. Kaufman, a widow and sister of the decedent, died testate on April 11, 1939, a resident of Lucas County, Ohio. On July 17, 1939, her will was admitted to probate and the Toledo Trust Co. was appointed administrator w.w.a. of her estate by the Probate Court of Lucas County, Ohio.

Except for the sum of $1,000 specifically bequeathed to the Forest Cemetery Association, Ethel F. Kaufman's will conveyed all of her property in trust to the Toledo Trust Co. (successor to Toledo Savings Bank & Trust Co.) to pay two-thirds of the income in equal shares to her brother, Leon D. Mowry; the decedent; and her nieces, Mary Henrietta Mowry and Ethel Baker Kolb, the only children of Leon and Justina, respectively. The will was, however, uncertain and subject to bona fide dispute as to the disposition of the other one-third of the income, the disposition of the remainder interest after the life estates, and the possible sharing by charities and other persons. Among other things the will dated October 6, 1923, provided:

This is my last will and testament. After my just debts and funeral expenses are paid I wish to have one thousand dollars placed with "The Forest Cemetery Association" * * *. I desire that the estate be placed with the Toledo Savings Bank and Trust Company of Toledo—Ohio with the understanding that no investments nor leases are to be made without the consent and approval of the respective heirs. Two thirds of the net income I wish to be equally divided among my brother Leon D. Mowry of Morenci, Michigan, my sister Justina C. Baker wife of J. A. Baker of Monroe, Michigan, my niece Ethel Baker Kolb wife of Clifton M. Kolb of Cleveland—Ohio and my niece Mary Henrietta Mowry daughter of Leon D. Mowry of Morenci, Michigan upon her attaining her eighteenth birthday.

Any children that may be born to my brother Leon D. Mowry or to his descendants or to my niece and her descendants to share equally in the estate upon attaining their majority.

In case there should remain no heirs the estate may be given to charities.

On October 24, 1939, Louis L. Fifield and others, as heirs of Charles E. Kaufman, deceased husband of Ethel F. Kaufman, filed a petition in the court of common pleas of Lucas County, Ohio, against the Toledo Trust Co., administrator w.w.a. of Ethel F. Kaufman's estate, Justina, Leon, Ethel, Mary, and others, contesting the validity of Ethel F. Kaufman's will, seeking a determination that there was an intestacy as to all of her property and, under section 10503–5, Ohio Gen. Code (the so-called "half and half statute," presently section 2105.10, Ohio Rev. Code), claiming one-half of the property which theretofore had been bequeathed to her by her said deceased husband. The proceedings are for convenience hereinafter sometimes referred to as "the will contest action."

The defendants in the will contest action filed a plea in abatement, an answer, and written interrogatories. The plaintiffs then filed a special demurrer to the defendants' interrogatories, a motion to strike the defendants' plea in abatement, and a brief in support thereof, which motion was denied by the court. The defendants' attorneys took depositions which indicated the legal capacity of said plaintiffs to claim under section 10503–5, Ohio Gen. Code.

Discussions were then had among counsel for the plaintiffs and defendants looking to a mutually satisfactory basis for settlement of the will contest action and the disputed provisions of Ethel F. Kaufman's will. By this time, 19 additional claimants had joined the original 3 plaintiffs in the will contest action. Recognizing that there was the possibility of claim by other unknown heirs and the next of kin of Ethel F. Kaufman and her deceased husband, as well as by the attorney general of the State of Ohio on behalf of charities, it was agreed that the will contest action could not be effectively disposed of without a will construction action as well.

Accordingly, such an action was instituted on March 15, 1941, by the Toledo Trust Co., administrator w.w.a. of the estate of Ethel F. Kaufman, deceased, in the Court of Common Pleas of Lucas County, Ohio, against Justina, Ethel, Leon, Mary, the 22 persons claiming to be heirs of Charles E. Kaufman, deceased, the attorney general of the State of Ohio, and others. The petition sought the court's construction of Ethel F. Kaufman's will, first, as to whether the will created a valid trust; second, if so, what portion of the estate was included in the trust, the term of the trust, the identity of the bene-

ficiaries, and their respective shares; and, finally, as to the validity of certain provisions for other persons and for charities. The petition also sought a decree barring all defendants other than Justina, Ethel, Leon, Mary, and the Forest Cemetery Association from claiming or asserting any right in the estate of Ethel F. Kaufman. The proceedings are for convenience hereinafter referred to as "the will construction action."

On April 5, 1941, Justina, Leon, Ethel, and Mary, together with Leon's wife and Ethel's husband, entered into an agreement to become effective only if and when the will contest action had been dismissed and the court had entered a decree in the will construction action that the entire estate of Ethel F. Kaufman, deceased, had been bequeathed to the Toledo Trust Co. in trust to pay two-thirds of the net income to the four of them and the survivor or survivors of them equally and to pay the other one-third of the income and the remainder of the estate to Justina and Leon equally. Upon such action being taken by the court and upon acceptance of the trust by the Toledo Trust Co. (which acceptance was given on April 5, 1941), the agreement provided (a) payment of $15,000 to the plaintiffs in the will contest action in full settlement; (b) until the death of the survivor of Justina and Leon, two-thirds of the trust income should be paid in equal shares to Justina, Leon, Ethel, Mary, and the survivors of them; (c) until the death of the survivor of Justina and Leon, the other one-third of the trust income should be paid in equal shares (two-twelfths) to Justina and Leon with provision that upon the death of the first of them to die, that one's share should be paid to his or her daughter (Ethel or Mary, as the case may be), if living, otherwise to such daughter's appointees by deed or will, and to such daughter's heirs in default of appointment; and (d) upon the death of the survivor of Justina and Leon, the trust should terminate and the trust corpus should be distributed one-half to Ethel and one-half to Mary, if living, otherwise to their respective appointees by deed or will, and in default of appointment, to their respective heirs. The agreement was not the result of a compromise of diverse positions with respect to the interpretation of the will as among Justina, Leon, Ethel, and Mary.

On June 25, 1941, the Court of Common Pleas of Lucas County, Ohio, entered an order dismissing the plaintiffs' petition in the will contest action. Immediately thereafter, the Toledo Trust Co., administrator w.w.a. of Ethel F. Kaufman's estate, paid $15,000 to the attorneys for the plaintiffs in such action in accordance with the agreed settlement.

Also on June 25, 1941, the Court of Common Pleas of Lucas County, Ohio, entered a decree in the will construction action (a) that Ethel F. Kaufman's will validly bequeathed $1,000 to the Forest Cemetery Association; (b) that the will created a valid trust of the entire residue of her estate; (c) that Justina, Leon, Ethel, and Mary, and the survivors of them, were, under the will, entitled to share equally in two-thirds of the net income of the trust; (d) that one-third of the net income of the trust was distributable in equal shares during the term of the trust to Justina and Leon; (e) that the entire estate should be held by the Toledo Trust Co. in trust during the lifetime of the four of them; (f) that the provisions in the will for charities and others were invalid; (g) that, upon termination of the life estates, the remainder of said estate would pass to Justina and Leon in undivided equal shares; (h) that all of the other defendants were barred from thereafter claiming or asserting any right, title, or interest in Ethel F. Kaufman's estate; and (i) that the administrator w.w.a. of the estate of Ethel F. Kaufman, deceased, was authorized and directed to distribute the entire estate to the Toledo Trust Co., as trustee under the will of Ethel F. Kaufman, deceased.

Also on June 25, 1941, the property distributable by the Toledo Trust Co., administrator w.w.a. of the estate of Ethel F. Kaufman, deceased, to itself as trustee under the will of Ethel F. Kaufman, deceased, had a fair market value of $476,158.02.

The value at June 25, 1941, of $1 payable at the death of the survivor of Justina, Leon, Ethel, and Mary, then aged 84, 78, 54, and 27 years, respectively, was $0.25131. The value at June 25, 1941, of $1 payable at the death of Justina, then aged 84, was $0.85534.

On December 22, 1941, the Probate Court of Lucas County, Ohio, appointed the Toledo Trust Co. as trustee under the will of Ethel F. Kaufman, deceased, and thereupon, pursuant to order of the court, all of the real and personal property of the estate of Ethel F. Kaufman, deceased, was distributed by the administrator w.w.a. of the estate to the trustee. Thereafter and until January 17, 1961, the property was held and administered by the trustee as a testamentary trust under Ohio law, under the jurisdiction and subject to the supervision of the Probate Court of Lucas County, Ohio.

The will of Justina C. Baker, admitted to probate by the Probate Court of Cuyahoga County, Ohio, on March 28, 1956, devised and bequeathed all of her property to her daughter Ethel. The Union Commerce Bank was on the same date appointed administrator w.w.a. of the estate of Justina C. Baker, deceased.

On January 27, 1957, the said alternate valuation date, the property held by the Toledo Trust Co., trustee under the will of Ethel

F. Kaufman, deceased, consisted of real property having a fair market value of $120,000 and personal property having a fair market value of $783,004.49.

The value at January 27, 1957, of $1 payable at the death of the survivor of Leon, Ethel, and Mary, then aged 92, 68, and 41 years, respectively, was $0.36715. Conversely, the value on January 27, 1957, of a right to the *income* from $1 for a period measured by the life of the survivor of Leon, Ethel, and Mary was $0.63285.

On May 1 and July 15, 1957, the Union Commerce Bank, administrator w.w.a. of Justina's estate, upon instructions of Ethel M. Kolb, as sole legatee of the estate, distributed to the Union Commerce Bank, trustee under agreement with Ethel M. Kolb, grantor, dated March 13, 1956, money in the sum of $16,495.72 and securities having a then fair market value of $319,882.94, making a total of $336,378.66.

On November 12, 1957, the said administrator w.w.a. of Justina's estate filed its final and distributive account with the Probate Court of Cuyahoga County, Ohio, and on December 30, 1957, the said court ordered the said account "approved and settled" and "the fiduciary and his surety discharged."

Leon D. Mowry died March 30, 1959, at the age of 95, survived by both Ethel and Mary.

On August 28, 1959, the Toledo Trust Co., trustee under the will of Ethel F. Kaufman, deceased, filed a petition in the Court of Common Pleas of Lucas County, Ohio, against Ethel, Mary, and Mary's husband, Lawrence C. Downer, praying for a declaratory judgment determining whether the merger of the life estates and the remainder interests in the real property held by it as trustee under the will of Ethel F. Kaufman, deceased, had occurred and whether the real property was then distributable in its entirety to Ethel and Mary. The defendants filed answers admitting the allegations and joining in the prayer of the petition. On October 14, 1959, the court entered its declaratory judgment that such merger had occurred on the death of Leon and that the real property was so distributable.

On October 15, 1959, Ethel and Mary transferred their respective undivided one-half interests in the real property to the Toledo Trust Co., as trustee under a trust agreement for their benefit. On July 12, 1960, the Toledo Trust Co., trustee under the will of Ethel F. Kaufman, deceased, obtained an order of the Probate Court of Lucas County, Ohio, authorizing distribution of the remaining property of the trust in equal shares to Ethel and Mary, and thereafter such distribution was made. The share so distributable to Ethel was distributed partly to her, partly to the Union Commerce Bank at her direction, and partly to the Union Commerce Bank in escrow.

No Federal gift tax return was filed by or on behalf of Justina C. Baker for any year. Justina did not make any taxable gifts to any person during any calendar year in excess of the annual exclusion provided by section 2503(b), I.R.C. 1954, and by corresponding provisions of prior law, other than such as may have occurred by reason of the foregoing transactions during the calendar year 1941.

Between January 27, 1956, the date of death of Justina C. Baker, and January 17, 1961, the date of final distribution of the trust under the will of Ethel F. Kaufman, deceased, there was incurred and paid $15,245.26 of expenses in administering the property in the trust. If any part of the property of the trust is properly includable in the gross estate of the estate of Justina C. Baker, deceased, a proportionate part of such expenses is allowable as a deduction under section 2053(b), I.R.C. 1954.

In addition to the amount of $15,245.26 stated in the preceding paragraph, the following were incurred and paid in connection with distribution of the property of the trust to Ethel Baker Kolb and Mary Mowry Downer upon termination of the trust:

| | |
|---|---:|
| Aug. 8, 1960, Federal documentary stamp taxes | $790.94 |
| Dec. 20, 1960, the Toledo Trust Co., final distribution fee | 12,496.00 |
| Dec. 21, 1960, Williams, Eversman and Black, attorneys' fees and disbursements | 5,432.94 |
| Total | 18,719.88 |

Petitioner will at or after trial incur attorneys' fees and other expenses which will be deductible in computing the taxable estate of Justina C. Baker, deceased. These amounts will be determined in the computations to be made under Rule 50.

In a statement attached to the statutory notice, the respondent, in determining the deficiency, added to the taxable estate of $351,077.89, as disclosed by the return, an amount of $555,482.70 with the following explanation:

It has been determined that the decedent, Justina C. Baker, was possessed of an undivided one-half vested interest in a Trust u/w of Ethel F. Kaufman. Since the decedent's interest in the property was not reported on the estate tax return, one-half of the property hereinafter described and valued at the applicable valuation date, is included in gross estate.

In his brief the respondent recedes from the amount of $555,482.70 to the extent that it exceeds $261,013.45. This latter amount is the valuation on January 27, 1957, of two interests, which respondent

contends is included in decedent's gross estate under section 2036(a) (1), I.R.C. 1954,[1] as follows:

| | |
|---|---|
| Right to ⅛ of the trust income for as long as the trust continued after Justina's death | [2] $95, 244. 40 |
| ½ of the remainder of the trust, subject to the outstanding life estates of Leon, Mary, and Ethel | [3] 165, 769. 05 |
| Total | 261, 013. 45 |

On the main issue (assignment of errors (a) and (b)) petitioner contends that Justina did not make any "transfer" during her lifetime; that Ethel's remainder and income interest in the one-third portion subsequent to Justina's life estate are treated as having been received, not from Justina, but directly from her aunt, Ethel F. Kaufman, by inheritance; and that in the alternative, even if Justina did make a "transfer" to Ethel, it was not one under which she "retained" the right to the income from the property transferred within the meaning of section 2036(a)(1) of the 1954 Code.

We do not think that Ethel (Baker Kolb) acquired the property here in question directly from her aunt, Ethel F. Kaufman, by inheritance. She was not one of her aunt's heirs. The Court of Common Pleas of Lucas County, Ohio, was asked to construe the will of Ethel F. Kaufman. In so construing the will the court found that only Justina and Leon were the "sole heirs at law and next of kin of said Ethel F. Kaufman, deceased." The court also found, except for the one specific bequest, that the entire estate of Ethel F. Kaufman was placed in trust during the lifetime of Justina, Leon, Ethel,

---

[1] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

    (1) the possession or enjoyment of, or the right to the income from, the property, or

[2] Determined as follows:

| | |
|---|---|
| Personal property held by trustee on Jan. 27, 1957 | $783, 004. 49 |
| Real property held by trustee on Jan. 27, 1957 | 120, 000. 00 |
| Total | 903, 004. 49 |
| ⅓ of $903,004.49 | 301, 001. 50 |
| Multiplied by factor | . 63285 |
| Total | 190, 488. 80 |
| ½ of $190,488.80 | 95, 244. 40 |

[3] Determined as follows:

| | |
|---|---|
| $903,004.49 multiplied by factor 0.36715 | $331, 538. 10 |
| ½ of $331,538.10 | 165, 769. 05 |

and Mary and "that one-third of the net income thereof [the trust] is not disposed of under the provisions of said will, and is distributable in equal shares during the term of said trust to Justina C. Baker and Leon D. Mowry, sister and brother, respectively, of said Ethel F. Kaufman, deceased, as her sole heirs at law and next of kin." In further construing the will of Ethel F. Kaufman, the court, in paragraph 7 of its journal entry, said:

> With reference to the third request of the plaintiff set forth in its petition, IT IS ORDERED, ADJUDGED AND DECREED that the true construction of said will is that the provision: "Any children that may be born to my brother, Leon D. Mowry, or to his descendants, or to my niece and her descendants, to share equally in the estate upon attaining their majority," violates the rule against perpetuities and is uncertain, and by reason thereof is invalid. The persons, to whom said estate descends under the intestate laws after the termination of said trust estate, are Justina C. Baker and Leon D. Mowry, sister and brother, respectively, of said Ethel F. Kaufman, deceased, her sole heirs and next of kin, who each take an undivided one-half ($\frac{1}{2}$) interest in the remainder of said estate after the life estate created in said trust.

On April 5, 1941, Justina, Leon, Ethel, and Mary entered into a written agreement wherein it was agreed that if the court construed the will of Ethel F. Kaufman in the manner as set forth above, then under the agreement:

> 3. In the event of the death of Mrs. Baker after the date that this agreement shall become effective, the Trustee shall distribute the net income of said trust estate during the lifetime of Mr. Mowry and after the death of Mrs. Baker, as follows:
>
> To Mr. Mowry, four-twelfths ($\frac{4}{12}$) of said net income;
> To Miss Mowry, two-twelfths ($\frac{2}{12}$) of said net income;
> To Mrs. Kolb, four-twelfths ($\frac{4}{12}$) of said net income.
>
> The remaining two-twelfths ($\frac{2}{12}$) of said net income shall be divided equally among the parties hereto surviving Mrs. Baker (other than Clifton M. Kolb and May Mowry), and the survivors of such parties, in accordance with the terms of said will, and the construction thereof herein agreed upon.

and

> 7. Upon the death of the last survivor of Mrs. Baker and Mr. Mowry, the trust estate shall terminate and Trustee shall deliver the corpus of the trust estate as follows:
>
> One-half ($\frac{1}{2}$) thereof to Mrs. Kolb, and, if she shall not survive Mrs. Baker and Mr. Mowry, then to such person or persons as she may appoint by deed or will, and in default of such appointment, then to her heirs at law;
> One-half ($\frac{1}{2}$) thereof to Miss Mowry, and if she shall not survive Mrs. Baker and Mr. Mowry, then to such person or persons as she may appoint by deed or will, and in default of such appointment, then to her heirs at law.

Therefore, under paragraph 3 of the April 5, 1941, agreement, after Justina's death, the income of the trust was distributable seven-

eighteenths [4] to each Leon and Ethel and four-eighteenths [5] to Mary; and, under paragraph 7 of the April 5, 1941, agreement, after the death of both Justina and Leon, the remainder of the trust was distributable one-half to each Ethel and Mary.

It seems that if it had not been for the agreement of April 5, 1941, Justina, upon her death on January 27, 1956, would have left in her estate certain property. But, by reason of the agreement, this property which would have been left in her estate, was transferred to her daughter Ethel. We think this was such a transfer as was intended by section 2036(a)(1), *supra*, to be included in the decedent's gross estate.

Petitioner argues that the April 5, 1941, agreement should be "read back" into the will of Ethel F. Kaufman so that the interests established by the agreement should be considered to have been acquired directly from the Kaufman estate. In support of this argument petitioner cites as controlling the principle enunciated by the Supreme Court in *Lyeth* v. *Hoey*, 305 U.S. 188 (1938), as applied in *Estate of Elizabeth W. Vease*, 35 T.C. 1184. After the briefs were filed in the instant case the *Vease* case was reversed by the Court of Appeals for the Ninth Circuit in *Commissioner* v. *Vease's Estate*, 314 F. 2d 79 (1963).

In the *Vease* case the decedent's father, James H. Walker, died testate in 1919. Shortly before his sudden death a draft of a new will was completed by his attorney under his direction, which Walker was unable to execute. Promptly after his death his attorney informed his widow, two daughters (including Elizabeth) and three sons of this fact but did not reveal the provisions of an existing will and the unexecuted draft will. Without knowing the contents of either document, the widow and children signed a valid agreement agreeing to do all that was necessary to carry out Walker's wishes in the unexecuted draft will relating to themselves. This agreement was carried out. Under it the daughters' shares of the residue of Walker's estate were transferred to trusts under which each daughter received income for life and had a limited, testamentary power of appointment over the remainder. Elizabeth received trust income but did not execute the power. She died in 1952 at the age of 49. We held that

---

[4] ¼ of ⅔ equals_____ 3/18
½ of ⅓ equals_____ 3/18
⅓ of ¼ of ⅔ equals_____ 1/18

Total_____ 7/18

[5] ¼ of ⅔ equals_____ 3/18
⅓ of ¼ of ⅔ equals_____ 1/18

Total_____ 4/18

Elizabeth did not transfer property to the trusts within the meaning of section 811(c), I.R.C. 1939 [6]; that the *Lyeth* case was undistinguishable in principle; and that:

The important point is that what Elizabeth received as a result of the family agreement she took because of her standing as an heir. It was that status which commanded the family agreement and was recognized by it.

The Ninth Circuit, in reversing our decision, held that we erred in holding that the principle of the *Lyeth* case was controlling and that in substance all that the beneficiaries of James H. Walker did was to agree upon a disposition of the property bequeathed to them in the executed will in a manner different from that provided in the executed will; and that, therefore, Elizabeth, during her lifetime, had made transfers of property which was to be included in her gross estate.

We think the *Vease* case is distinguishable from the instant case on the facts and that neither our decision nor the Ninth Circuit's decision in that case is applicable here. Ethel (Baker Kolb) was not an heir of her aunt, Ethel F. Kaufman. As held by the Court of Common Pleas of Lucas County, Ohio, in its journal entry dated June 25, 1941, Ethel took nothing from her aunt's estate except a life interest in one-fourth of two-thirds of the income of the trust set up by Ethel F. Kaufman. The court specifically held that one-third of the income of the trust and the remainder went to Justina and Leon, as previously set forth, "as her sole heirs at law and next of kin." We, therefore, hold that the instant case is distinguishable from the *Lyeth* and *Vease* cases, that Justina received from her sister by inheritance one-half of one-third of the income of the trust and also one-half of the remainder, and that by the 1941 agreement the property transferred to Ethel came from her mother Justina as a gratuity and did not come to Ethel as an heir of her aunt.

Neither do we agree with petitioner's alternative contention that even if Justina did make a "transfer" to Ethel, which we have held she did, it was not one under which she "retained" the right to the income from the property transferred within the meaning of the word "retained" as used in section 2036(a)(1), *supra*. Petitioner argues that the word "retained" is synonymous with the word "reserved"; that Justina did not reserve or carve out a life estate in the property now being included in her gross estate by respondent for the reason that, under the will of her sister Ethel F. Kaufman, deceased, as construed by the Court of Common Pleas, she already had such a life estate in one-half of one-third of the trust income and one-half of the remainder, and that, therefore, the transfers took effect in 1941 when the April 5, 1941, agreement was made and not at Justina's death, thus making section 2036(a)(1), *supra*, inoperative.

---

[6] Identical in substance with sec. 2036(a)(1), I.R.C. 1954.

We do not think that when Justina made the transfer of one-half of the remainder to take effect on the death of herself and Leon and one-half of one-third of the trust income to take effect upon her death, the transfers should not be included in her estate, because at the time she made them she already had a life estate in one-half of one-third of the trust income and a life estate in one-fourth of two-thirds of the trust income. These she retained when she made the transfers. The respondent is not including these life estates in Justina's gross estate. It is only the value of one-half of one-third of the trust income for the period after Justina's death and during the life of the survivor of Leon, Ethel and Mary, and the value of one-half of the remainder that respondent now contends should be included in Justina's gross estate. If Justina had not made these transfers under the April 5, 1941, agreement, these interests would still have been in Justina's estate when she died and would have been a part of her gross estate. We think the transfers are includable in her gross estate under section 2036(a)(1), *supra.*

In its brief petitioner says, "This precise question was decided in *Estate of Bernard E. Denzer*, 29 T.C. 237 (1957), acq. 1958-2 C.B. 5." We do not agree. In the *Denzer* case there was no creation of a new trust but simply the retention of one-half of the original trust created by Bernard's father, the original settlor. In the instant case there was an actual transfer of the interests now contended for by respondent wherein Justina retained the life estates in such interests given to her by her sister Ethel F. Kaufman.

Both parties in their briefs have cited other cases in support of their respective contentions. We have examined all of those cases and do not find any of them controlling one way or the other. We think the stipulated facts clearly show that Justina made transfers during her lifetime which are to be included in her gross estate under section 2036(a)(1), *supra.* We, therefore, sustain the respondent's determination to the extent that the inclusion in the gross estate does not exceed the amount of $261,013.45.

In connection with assignment of error (d), the parties have stipulated thus:

29. Respondent contends and Petitioner denies that Justina C. Baker made a gift for federal gift tax purposes during the calendar year 1941. If Respondent's contention is sustained, the amount of any federal gift tax liability for such year together with interest accrued thereon to January 27, 1956, the date of her death, is deductible as a claim against the estate under Section 2053(a)(3), Internal Revenue Code of 1954. *Petitioner contends and Respondent denies that interest on any such deficiency for periods after January 27, 1956, the date of her death, is deductible as administration expenses under Section 2053(a)(2), Internal Revenue Code of 1954.* [Emphasis supplied.]

In his brief the respondent makes this statement:

Although no liability for a gift tax has been asserted, the parties are in agreement that a ruling for the respondent on Issue I will give rise to a liability for a gift tax. It further is agreed that the decedent's estate will be entitled to a deduction and credit against tax for such liability; *however, there is an issue between the parties regarding the allowance of a deduction for interest accruing on the gift tax liability after the date of the decedent's death.* [Emphasis supplied.]

The respondent then cites certain cases as authority for holding that no deduction is allowable for estate tax purposes for interest accruing on a gift tax liability after the date of decedent's death, even though the liability (including interest to date of payment) is paid by the estate. Among these cases are *Estate of William Macpherson Hornor*, 44 B.T.A. 1136, affd. 130 F. 2d 649 (C.A. 3, 1942); and *Florence Scofield Stone et al., Executrices*, 38 B.T.A. 51, 58–59 (reversed and remanded C.A. 2, on stipulation not covering this point). Petitioner contends that the *Hornor* case is distinguishable on the ground that although it involved interest on a gift tax which accrued after the decedent's death, it was held not allowable "as a *claim* against the estate" and that the question of whether it was allowable as an "administration" expense was neither argued by the taxpayer nor decided by the Board. The *Stone* case involved interest paid on an income tax deficiency after the decedent's death and we held that there was no basis for allowing the deduction either as a claim against the estate *or as an administration expense.* We later cited the *Stone* case as authority for our holding in the *Hornor* case. We hold for the respondent on this issue.

Regarding the issue raised by assignment of error (e), the parties have stipulated as follows:

Petitioner contends and Respondent denies that these expenses [$18,719.88] are properly allowable as a deduction under Section 2053(b), Internal Revenue Code of 1954. If Petitioner's contention is sustained as to such expenses and if any part of the property of the said trust is properly includible in the gross estate of the Estate of Justina C. Baker, Deceased, then a proportionate part of such expenses are allowable as a deduction under that Section in addition to the amounts stated in paragraph 27 [relating to the $15,245.26] of this stipulation.

We know of no reason why the expenses of $18,719.88 should be treated in any different manner from those conceded by the respondent in the amount of $15,245.26. The respondent contends that the expenses of $18,719.88 were not occasioned by Justina's death and incurred in settling her interest in the property or vesting good title in Ethel and Mary but were incurred on behalf of Ethel and Mary and are, therefore, not deductible under that part of section 20.2053–8(b) of his regulations, which provides:

The only expenses in administering property not subject to claims which are allowed as deductions are those occasioned by the decedent's death and incurred

in settling the decedent's interest in the property or vesting good title to the property in the beneficiaries. Expenses not coming within the description in the preceding sentence but incurred on behalf of the transferees are not deductible.

We do not agree with the respondent that the expenses in question were not occasioned by the decedent's death or in vesting good title to the property in the beneficiaries Ethel and Mary. The April 5, 1941, agreement specifically provided that, upon the death of Justina and Leon, the remainder of trust property was to go one-half to Ethel and one-half to Mary. The phrase "occasioned by the decedent's death" as used in the regulations does not require that the expenses be proximately caused by the decedent's death. The only requirement is that death be a condition precedent to incurring the expenses. *Central Trust Co. of Cincinnati, Ohio* v. *Welch*, 304 F. 2d 923 (C.A. 6, 1962). In that case, substantially the same kind of expenses as those totaling $18,719.88 was involved and were allowed by the court as other administration expenses under section 2053(b) of the 1954 Code. In considering the portion of the regulations relied upon by the respondent, the court said:

It is clear that the expenses incurred by the trustee in defending the daughter's suit begun after the mother's death were, under § 20.2053–8 of the estate-tax regulations, occasioned by the mother's death and were actually and necessarily incurred in connection with the administration of her estate.

In the instant case Justina's death was a condition precedent to the termination of the trust. The 1941 agreement, pursuant to which the trust was administered, provided that the trust was to terminate on the death of the survivor of Justina and Leon. Clearly, the trust could not terminate unless and until Justina had died, regardless of the order of death. Thus, although Justina's death may not have caused the termination of the trust and the expenses attendant thereto, such death was plainly a condition precedent to termination in the same way that in the *Central Trust Co.* case the mother's death was a condition precedent to the daughter's action to set aside the revocable trust.

We also think the expenses were, in the words of the regulations, "incurred in * * * vesting good title to the property in the beneficiaries." They were incurred as necessary incidents to the transfer of title to the trust property from the trustee to Ethel and Mary. The 1941 agreement required the income interests of the trust to terminate upon the death of both Justina and Leon and upon their death the expenses were incurred in transferring the title to the trust property from the trustee to the beneficiaries.

We, therefore, hold that a proportionate part of the expenses of $18,719.88 is allowable as other administration expenses under sec-

tion 2053(b) of the 1954 Code, and section 20.2053-8(b) of the regulations.

Petitioner concedes transferee liability providing we find, as we have, that there will be a deficiency in estate tax of the estate of Justina C. Baker.

*Decision will be entered under Rule 50.*