The **UNION COMMERCE BANK,**
Transferee, Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.**

No. 15607.

United States Court of Appeals
Sixth Circuit.

Dec. 14, 1964.

James C. Davis, Cleveland, Ohio, War-
ren E. Hacker, William H. Lutz, Jr.,
Stephen J. Alfred, Squire, Sanders &
Dempsey, Cleveland, Ohio, on brief, for
petitioner.

Gilbert E. Andrews, Department of
Justice, Washington, D. C., Louis F.
Oberdorfer, Asst. Atty. Gen., Lee A.
Jackson, Michael I. Smith, Department
of Justice, Washington, D. C., on brief,
for respondent.

Before CECIL and EDWARDS, Cir-
cuit Judges, and TAYLOR, District
Judge.

EDWARDS, Circuit Judge.

This appeal requires interpretation of
Section 2036(a) of the Internal Revenue
Code of 1954—the pertinent portions of
which are quoted below:

*"Transfers with retained life estate*

"(a) *General rule.*—The value of
the gross estate shall include the
value of all property (except real
property situated outside of the
United States) to the extent of any
interest therein of which the dece-
dent has at any time made a trans-
fer (except in case of a bona fide sale
for an adequate and full considera-
tion in money or money's worth),
by trust or otherwise, under which
he has retained for his life or for
any period not ascertainable with-
out reference to his death or for any

period which does not in fact end before his death—

"(1) the possession or enjoyment of, or the right to the income from, the property, or

"(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom." 26 U.S.C.1958 ed., § 2036(a).

In 1941 Justina C. Baker made a conveyance to her daughter (Mrs. Kolb) of certain interests in a trust which she had inherited from her own deceased sister (Mrs. Kaufman). She also retained the income available to her from said trust. Petitioner, Union Commerce Bank, contended before the Tax Court[1] and contends here that the 1941 transactions did not represent a transfer of property with the retention of a life interest within the meaning of Section 2036(a).

The Tax Court held that " * * * Justina retained the life estates in such interests given to her by her sister Ethel F. Kaufman." And that " * * * [T]he stipulated facts clearly show that Justina made transfers during her lifetime which are to be included in her gross estate under section 2036(a) (1), supra. We, therefore, sustain the respondent's determination to the extent that the inclusion in the gross estate does not exceed the amount of $261,013.45."

The facts are long, complicated and, fortunately, stipulated:

"Petitioner, the Union Commerce Bank, as trustee under an agreement with Ethel Baker Kolb (sometimes referred to as Ethel M. Kolb), grantor, dated March 13, 1956, is liable as transferee of property of Ethel Baker Kolb, transferee of property of the estate of Justina C. Baker, deceased, for a deficiency, if any, in Federal estate tax (including interest) of the estate of Justina

C. Baker, deceased, to the extent of $336,378.66.

"Justina C. Baker, a widow, hereinafter sometimes referred to as the decedent, died testate on January 27, 1956, at the age of 98, a resident of Cuyahoga County, Ohio, survived by her daughter, Ethel Baker Kolb. A Federal estate tax return for her estate was filed with the district director of internal revenue for the Cleveland district of Ohio on April 26, 1957. In such return an election was made under section 2032, I.R.C.1954, to value the estate in accordance with the alternate valuation provisions in the Code. The return showed a gross estate of $417,935.48, a taxable estate of $351,077.89, and a net estate tax of $90,890.43, which latter amount was paid to the district director with the return.

"Ethel F. Kaufman, a widow and sister of the decedent, died testate on April 11, 1939, a resident of Lucas County, Ohio. On July 17, 1939, her will was admitted to probate and the Toledo Trust Company was appointed administrator w. w. a. of her estate by the Probate Court of Lucas County, Ohio.

"Except for the sum of $1,000 specifically bequeathed to the Forest Cemetery Association, Ethel F. Kaufman's will conveyed all of her property in trust to the Toledo Trust Company (successor to Toledo Savings Bank and Trust Company) to pay two-thirds of the income in equal shares to her brother, Leon D. Mowry; the decedent; and her nieces, Mary Henrietta Mowry and Ethel Baker Kolb, the only children of Leon and Justina, respectively. The will was, however, uncertain and subject to bona fide dispute as to the disposition of the other one-third of the income, the disposition of the remainder interest after the life estates, and the possible sharing

1. Union Commerce Bank, Transferee v. Commissioner, 39 T.C. 973 (1963).

by charities and other persons. Among other things the will dated October 6, 1923, provided:

" 'This is my last will and testament. After my just debts and funeral expenses are paid I wish to have one thousand dollars placed with "The Forest Cemetery Association" * * *. I desire that the estate be placed with the Toledo Savings Bank and Trust Company of Toledo, Ohio with the understanding that no investments nor leases are to be made without the consent and approval of the respective heirs. Two thirds of the net income I wish to be equally divided among my brother Leon D. Mowry of Morenci, Michigan, my sister Justina C. Baker wife of J. A. Baker of Monroe, Michigan, my niece Ethel Baker Kolb wife of Clifton M. Kolb of Cleveland, Ohio and my niece Mary Henrietta Mowry daughter of Leon D. Mowry of Morenci, Michigan upon her attaining her eighteenth birthday.

" 'Any children that may be born to my brother Leon D. Mowry or to his descendants or to my niece and her descendents to share equally in the estate upon attaining their majority.

" 'In case there should remain no heirs the estate may be given to charities.' "

As any lawyer would anticipate, extensive litigation was threatened by a variety of parties and both a will contest and a suit to construe the will were filed.

Agreement between the major parties was arrived at, however, and reduced to contractual terms. And thereafter the will contest was dismissed and a decree construing the will was entered. As to these matters the stipulated facts recite:

"On April 5, 1941, Justina, Leon, Ethel, and Mary, together with Leon's wife and Ethel's husband, entered into an agreement to become effective only if and when the will contest action had been dismissed and the court had entered a decree in the will construction action that the entire estate of Ethel F. Kaufman, deceased, had been bequeathed to the Toledo Trust Company in trust to pay two-thirds of the net income to the four of them and the survivor or survivors of them equally and to pay the other one-third of the income and the remainder of the estate of Justina and Leon equally. Upon such action being taken by the court and upon acceptance of the trust by the Toledo Trust Company (which acceptance was given on April 5, 1941), the agreement provided (a) payment of $15,000 to the plaintiffs in the will contest action in full settlement; (b) until the death of the survivor of Justina and Leon, two-thirds of the trust income should be paid in equal shares to Justina, Leon, Ethel, Mary, and the survivors of them; (c) until the death of the survivor of Justina and Leon, the other one-third of the trust should be paid in equal shares ($\frac{2}{12}$) to Justina and Leon with provision that upon the death of the first of them to die, that one's share should be paid to his or her daughter (Ethel or Mary, as the case may be), if living, otherwise to such daughter's appointees by deed or will, and to such daughter's heirs in default of appointment; and (d) upon the death of the survivor of Justina and Leon, the trust should terminate and the trust corpus should be distributed one-half to Ethel and one-half to Mary, if living, otherwise to their respective appointees by deed or will, and in default of appointment, to their respective heirs. The agreement was not the result of a compromise of diverse positions with respect to the interpretation of the will as among Justina, Leon, Ethel, and Mary.

"On June 25, 1941, the Court of Common Pleas of Lucas County, Ohio, entered an order dismissing the plaintiffs' petition in the will

contest action. Immediately thereafter, the Toledo Trust Company, administrator w. w. a. of Ethel F. Kaufman's estate, paid $15,000 to the attorneys for the plaintiffs in such action in accordance with the agreed settlement.

"Also on June 25, 1941, the Court of Common Pleas of Lucas County, Ohio, entered a decree in the will construction action (a) that Ethel F. Kaufman's will validly bequeathed $1,000 to the Forest Cemetery Association; (b) that the will created a valid trust of the entire residue of her estate; (c) that Justina, Leon, Ethel, and Mary, and the survivors of them, were, under the will, entitled to share equally in two-thirds of the net income of the trust; (d) that one-third of the net income of the trust was distributable in equal shares during the term of the trust of Justina and Leon; (e) that the entire estate should be held by the Toledo Trust Company in trust during the lifetime of the four of them; (f) that the provisions in the will for charities and others were invalid; (g) that, upon termination of the life estates, the remainder of said estate would pass to Justina and Leon in undivided equal shares; (h) that all of the other defendants were barred from thereafter claiming or asserting any right, title, or interest in Ethel F. Kaufman's estate; and (i) that the administrator w. w. a. of the estate of Ethel F. Kaufman, deceased, was authorized and directed to distribute the entire estate to the Toledo Trust Company, as trustee under the will of Ethel F. Kaufman, deceased."

The stipulated facts also show the value of the trust property on the date of the agreement referred to above—June 25, 1941—and on the date of Justina C. Baker's death:

"Also on June 25, 1941, the property distributable by the Toledo Trust Company, administrator w. w. a. of the estate of Ethel F. Kaufman, deceased, to itself as trustee under the will of Ethel F. Kaufman, deceased, had a fair market value of $476,158.02.

"The value at June 25, 1941, of $1 payable at the death of the survivor of Justina, Leon, Ethel, and Mary, then aged 84, 78, 54, and 27 years respectively, was $0.25131. The value at June 25, 1941, of $1 payable at the death of Justina, then aged 84, was $0.85534.

"* * * *

"On January 27, 1957, the said alternate valuation date, the property held by the Toledo Trust Company, trustee under the will of Ethel F. Kaufman, deceased, consisted of real property having a fair market value of $120,000 and personal property having a fair market value of $783,-004.49.

"The value at January 27, 1957, of $1 payable at the death of the survivor of Leon, Ethel, and Mary, then aged 92, 68, and 41 years, respectively, was $0.36715. Conversely the value on January 27, 1957, of a right to the *income* from $1 for a period measured by the life of the survivor of Leon, Ethel, and Mary was $0.63285."

■ On these facts appellant contends that there was not a "transfer" with a "retained" life estate within the meaning of § 2036(a) because:

(1) Mrs. Kolb should be held to have received her interest in the trust not from her mother, Justina C. Baker, but from Mrs. Kaufman, her aunt.

(2) Mrs. Baker's interests in the trust were separate and severable, and, hence, if she be held to have transferred one or more of her interests, that (or those) which she kept could not properly be regarded as "retained" (or "carved out of") the whole interest she had in the trust.

The first of these arguments, as the Tax Court pointed out, runs directly afoul of the specific determinations of the Lucas County Court of Common

Pleas in its construction of the will. As to this decree the stipulation recited:

> "* * * (d) that one-third of the net income of the trust was distributable in equal shares during the term of the trust to Justina and Leon; * * * (g) that, upon termination of the life estates, the remainder of said estate would pass to Justina and Leon in undivided equal shares; * * *."

As to the second argument, we can only say that the construction of the word "retained" offered by petitioner ("carved out") is not the customary definition. Webster [2] defines "retain" with such synonyms as "keep," "hold," "to hold in possession or use."

Nor are we impressed that Mrs. Baker's interests in the trust were of such a separate and distinct character as to require us to hold that she did not "transfer" some and "retain" some within the meaning of § 2036(a). Actually, as we see the matter, by the 1941 agreement Mrs. Baker gave her daughter all the interest she had in the trust, except the income from it for the duration of her life.

Even more specifically, perhaps, we hold that the property interests in the trust which Mrs. Baker inherited were for purposes of § 2036(a) the "property" which produced both her "retained" life income and the "remainder" which was subjected to "transfer."

We recognize, of course, that this is not the typical transfer with retained life interest to which § 2036(a) ordinarily applies. The typical situation would probably pertain to an entity of real estate or personalty to which the transferor owned exclusive title. But we find nothing in the statute which exempts an inherited interest or interests in a trust from being treated as "property," or which requires income and reversionary interests in such a trust to be considered as separate property entities for purposes of § 2036(a).

We believe that the case closest in point to the instant controversy is Sexton v. United States, 300 F.2d 490 (C.A. 7, 1962), cert. denied, 371 U.S. 820, 83 S. Ct. 36, 9 L.Ed.2d 60 (1962). In this case the Seventh Circuit concluded:

> "Once it is determined that decedent relinquished a property interest, there can be no doubt that the value of decedent's equitable share in the trust corpus is taxable at least under Section 2036(a) (1). Decedent affirmatively relinquished her right to receive her share in the corpus and thereby is considered to have made a transfer of her property interest in the corpus. The transfer was with a retained interest— an interest in the income of the trust for her life. This is sufficient to make the transfer includible in decedent's gross estate under Section 2036." (Footnote omitted.) Sexton v. United States, supra 300 F.2d at 493.

Blakeslee v. Smith, 26 F.Supp. 28 (D. Conn.1939), aff'd. 110 F.2d 364 (C.A.2, 1940), and Estate of Denzer v. Commissioner, 29 T.C. 237 (1957), relied upon by appellant, are plainly distinguishable upon their facts.

■ The second issue in this appeal concerns whether or not the Tax Court was correct in disallowing certain interest payments as deductions from the estate for purposes of computation of the estate tax. The payments which were disallowed were for interest on overdue gift taxes for the period after the death of decedent.

We do not find such interest payments covered by any item specifically described as deductible as administrative expense in the applicable Treasury Regulation, Treas.Reg. § 20.2053–3.

And in a number of decisions such deductions for post-death interest payments have been denied. Old Colony Trust Co. v. United States, 15 F.Supp. 417 (D.C.Mass.1936); Estate of Hornor,

---

2. Webster's Third New International Dictionary at p. 1938.

44 B.T.A. 1136 (1941), aff'd. 130 F.2d 649 (C.A.3, 1942); S. Sussman v. United States, 236 F.Supp. 507 (E.D.N.Y.1962).

This does not, however, necessarily end the matter.

■ More important, of course, is the fact that the applicable provision of the Internal Revenue Code of 1954 refers us for the answer to this problem to the laws of Ohio wherein this estate is being administered:

"§ 2053.  *Expenses, indebtedness, and taxes*

"(a) *General rule.*—For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

"(1) for funeral expenses,

"(2) for administration expenses,

"(3) for claims against the estate, and

"(4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,

"as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered."  26 U.S.C.1958 ed., § 2053 (a).

This court has previously recognized the express language of this provision as making state law controlling.  Goodwin's Estate v. Commissioner of Internal Revenue, 201 F.2d 576 (C.A.6, 1953).  See also United States v. Stapf, 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963), rehearing denied, 375 U.S. 981, 84 S.Ct. 477, 11 L.Ed.2d 428 (1964).

Under the Ohio Probate Code we find this language applicable to administrative expenses:

"Allowances  *  *  *  which the probate court considers just and reasonable shall be made for actual and necessary expenses and for extraordinary services not required of an executor or administrator in the common course of his duty."  Ohio Rev.Code Ann. § 2113.36.

We also find this interesting (although not directly controlling) provision concerning postdeath interest:

"Debts not due may, and on demand of the creditor shall, if assets are available therefor, be paid by the executor or administrator according to the class to which they belong. If the debt does not bear interest before maturity, it shall be discounted at the legal rate of interest; *otherwise the stipulated rate of interest shall be paid to time of payment.*"  (Emphasis added.)  Ohio Rev.Code Ann. § 2117.28.

It seems clear to us that this issue was decided by the Tax Court under a misconception as to the controlling law.  The record does not reveal how (or whether) the Ohio Probate Court has dealt with the instant claimed administrative expense, although a Treasury Regulation (Treas.Reg. § 20.2053–1(b) (2)) places some considerable weight upon the effect of any local court decree.  See Goodwin's Estate v. Commissioner of Internal Revenue, supra, 201 F.2d at 579.

In addition, on the state of the record as presented in this appeal, the delay which occasioned the disputed interest payments does not appear to have been based on any element of bad faith or willful tax evasion.  Cf. Old Colony Trust Company v. United States, supra.

Under these circumstances this issue is remanded to the Tax Court for taking of such additional testimony as may be necessary and for recomputation of the tax under Tax Court Rules 50 and 51 and in accordance with this opinion.

Affirmed in part; reversed in part. Decision vacated and the case remanded for further proceedings.