125 F.3d 339
 80 A.F.T.R.2d 97-6347
 ESTATE OF Marguerite S. MILLIKIN, Deceased, Quentin
Alexander, Executor, and Severance A. Millikin
Trust B, Society National Bank, f/k/a
Ameritrust Company, Trustee,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 96-1012.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 11, 1997.
Decided Sept. 10, 1997.
 
 Irene C. Keyse-Walker (briefed), Robert E. Glaser (argued and briefed), Arter & Hadden, Cleveland, OH, for Petitioners-Appellants.
 Gary R. Allen, Acting Chief, Jonathan S. Cohen (argued and briefed), Ernest J. Brown (briefed), Tamara L Schottenstein, U.S. Department of Justice, Appellate Section Tax Division, Washington, DC, for Respondent-Appellee.
 Before: MARTIN, Chief Judge; MERRITT, KENNEDY, CONTIE, NELSON, RYAN, BOGGS, NORRIS, SUHRHEINRICH, SILER, BATCHELDER, DAUGHTREY, MOORE, and COLE, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 During the administration of an estate, the petitioners spent $750,000 on upkeep and maintenance of "Ripplestone," a 150-acre country estate near Cleveland. The estate seeks to deduct this amount as an expense of administration on its estate tax return under 26 U.S.C. § 2053(a), which allows the deduction of "such ... administration expenses ... as are allowable by the [probate] laws" of the State of administration. The estate challenges the Commissioner of Internal Revenue's refusal to allow the estate to deduct these expenses. The estate claims that the costs are deductible administration expenses because the estate reasonably anticipated an estate tax audit and delayed distribution of the real property in order to retain sufficient assets to pay a potential tax deficiency. The Tax Court analyzed the deductibility question solely under Ohio law, in accordance with our prior opinion in Estate of Park v. Commissioner, 475 F.2d 673 (6th Cir.1973), and ruled in favor of the Commissioner. We are persuaded, however, that Estate of Park was incorrectly decided, and therefore overrule that decision. Unfortunately, the factual record is insufficiently developed to allow resolution of the deductibility question under the proper standards. Therefore, we vacate the Tax Court opinion and remand the case for further proceedings.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 Marguerite Millikin, a resident of Ohio and the widow of a wealthy businessman, died testate on June 18, 1989. Her husband, Severance Millikin, had established three trusts that are relevant to this action during his lifetime: Trust A, a charitable trust for the benefit of three nonprofit organizations; Trust B, which is a petitioner in this action; and Trust C, a residuary trust that had twenty-eight beneficiaries at the time of trial. Trust B was a marital deduction trust over which Marguerite Millikin had general power of appointment. Trust B's assets at the time of Marguerite Millikin's death included stocks and bonds worth approximately $9 million and the 150-acre estate with improvements known as "Ripplestone," where Marguerite Millikin resided at the time of her death. Due to Marguerite Millikin's general power of appointment, as well as the tax law applicable to the marital deduction, Trust B's assets form part of her gross estate for federal estate tax purposes, 26 U.S.C. § 2041(a)(2), but are not probate assets under state probate law and are not subject to claims against her estate. Therefore, her estate and Trust B are separate but related legal entities.
 
 
 3
 In her will, Marguerite Millikin partially exercised her power of appointment over Trust B's assets. She appointed $2 million to charity to be allocated to Trust A. In addition, she appointed to her estate assets equal to the amount of extra estate tax that her estate had to pay due to the inclusion of Trust B's assets in her gross estate. According to Trust B's terms, the trustee was to transfer the remainder of the assets following these appointments to Trust C for distribution to its beneficiaries.
 
 
 4
 The estate filed its federal estate tax return on March 16, 1990, two years after the widow's death, asserting $3,892,355.31 total federal estate tax liability and $1,379,745.66 federal generation-skipping transfer tax liability, and claiming a credit of $1,071,656.26 for state death taxes paid. The executor valued Ripplestone at $3.2 million on the tax return, and claimed a deduction of $150,000 for the estimated costs to sell Ripplestone. The estate claims that immediately after the estate filed its tax return, Trust B's assets other than Ripplestone totaled only $220,822. The Commissioner, however, claims that the amount of assets remaining in Trust B at that time cannot be determined from the record before this court.
 
 
 5
 The executor and the trustee put Ripplestone up for sale on March 20, 1990. Although Ripplestone's value was appraised at $3.7 million on July 19, 1989 and at $3 million on November 22, 1991, its actual selling price was only $2,301,750 on April 20, 1994. This lower selling price and the delay in effectuating the sale, resulted from two discoveries following the appraisals: six underground fuel storage tanks had leaked, contaminating the soil, and local zoning laws prevented subdivision of the property.
 
 
 6
 Prior to Ripplestone's eventual sale, the Internal Revenue Service audited the estate. On February 25, 1993, the IRS issued deficiency notices of $682,367 in estate tax and $67,529 in generation-skipping transfer tax based on the IRS's valuation of Ripplestone at $3.7 million. This figure was identical to the only appraisal of Ripplestone that had been completed when the executor filed the estate tax return.
 
 
 7
 The estate filed a petition challenging the deficiency notices on May 17, 1993. Although the parties eventually entered a stipulation as to Ripplestone's value after it was sold, the estate continued to pursue a claim for a deduction of $757,356.27 for the costs to maintain and sell Ripplestone following Marguerite Millikin's death. The estate claims that these costs are deductible administration expenses under 26 U.S.C. § 2053(a)-(b).
 
 
 8
 Based on our holding in Estate of Park v. Commissioner, 475 F.2d 673 (6th Cir.1973), the Tax Court looked to Ohio law to determine the deductibility of the maintenance and selling costs. The Tax Court determined that Ohio law allows estates to deduct administration expenses only to the extent that those expenses are necessary, reasonable, and just. Based on its reading of Ohio law, the Tax Court allowed the estate to deduct the costs of maintaining Ripplestone only through March 16, 1990, rather than through when Ripplestone was sold. The Court ruled that it was necessary to maintain Ripplestone only until then to allow the Cleveland Museum of Art to select items from Millikin's art collection, in accordance with the terms of her will. The Court ruled that after the selection was complete and the executor filed the estate tax return, retention of Ripplestone was no longer necessary under Ohio law; thus, Trust B should have transferred Ripplestone to Trust C. The Court therefore did not allow the estate to deduct the selling costs and the costs of maintaining Ripplestone subsequent to March 16, 1990. On appeal, the parties have limited their arguments to the deductibility of the maintenance costs following March 16, 1990.
 
 II. ANALYSIS
 
 9
 A. The Standard for Determining Deductibility of Administration Expenses
 
 
 10
 The estate claims that the costs of maintaining Ripplestone are deductible as administration expenses pursuant to 26 U.S.C. § 2053(b). That section provides:
 
 
 11
 (b) Other administration expenses.--Subject to the limitations in paragraph (1) of subsection (c), there shall be deducted in determining the taxable estate amounts representing expenses incurred in administering property not subject to claims which is included in the gross estate to the same extent such amounts would be allowable as a deduction under subsection (a) if such property were subject to claims, and such amounts are paid before the expiration of the period of limitation for assessment provided in section 6501.
 
 
 12
 It is undisputed that Ripplestone is included in the gross taxable estate and that the estate paid the costs in question. Thus, the only issue in dispute is whether or not the costs would be deductible under 26 U.S.C. § 2053(a) if Ripplestone were a probate asset. 26 U.S.C. § 2053(a) provides:
 
 
 13
 (a) General rule. For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts
 
 
 14
 (1) for funeral expenses,
 
 
 15
 (2) for administration expenses,
 
 
 16
 (3) for claims against the estate, and
 
 
 17
 (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,
 
 
 18
 as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.
 
 
 19
 The estate argues that the costs of maintaining Ripplestone are administration expenses allowed under Ohio law. Therefore, the estate claims, they are deductible under 26 U.S.C. §§ 2053(a)(2) & 2053(b). The Commissioner, however, claims that state law alone should not be determinative. The Commissioner relies on Treasury Regulation § 20.2053-3(a), which provides, in part: "The amounts deductible from a decedent's gross estate as 'administration expenses' ... are limited to such expenses as are actually and necessarily, incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it." 26 C.F.R. § 20.2053-3(a). The Commissioner asserts that this regulation imposes a separate, federal requirement that expenses must be "actually and necessarily incurred" in order to be deductible, and claims that this requirement is in addition to the statutory requirement that the expenses must be "allowable by the laws of the jurisdiction." The Commissioner argues that this additional requirement does not conflict with the statutory standard. Instead, the regulation merely defines the allegedly ambiguous term "administration expenses" in the statute.
 
 
 20
 Over twenty years ago, a panel of this Court considered a similar question in Estate of Park v. Commissioner, 475 F.2d 673 (6th Cir.1973), and ruled that deductibility of administration expenses is determined solely under state probate law. The Tax Court properly considered itself bound by Estate of Park, as did the panel of our Court that heard the estate's initial appeal. In this en banc review, however, the Commissioner has asked us to reconsider Estate of Park. In light of developments in the law since Estate of Park was decided--particularly the Supreme Court's decision in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), and opinions from other circuits--we find that Estate of Park is no longer good law, and we therefore overturn that decision.
 
 
 21
 The Estate of Park panel held that "[b]y the literal language of § 2053(a), Congress has left the deductibility of administrative expenses to be governed by their chargeability against the assets of the estate under state law." Estate of Park, 475 F.2d at 676. The panel did not provide any analysis for its conclusion that the Commissioner's definition of deductible expenses should be ignored. Instead, it relied on two earlier Sixth Circuit cases it said established that the deductibility of administration expenses is governed solely by state law. Closer examination of those cases, however, reveals that they do not justify Estate of Park's holding.
 
 
 22
 The first of the cases, Union Commerce Bank v. Commissioner, 3 Ohio Misc. 189, 339 F.2d 163 (6th Cir.1964), also failed to engage in any independent analysis. Instead, the Union Commerce Bank court relied solely on Goodwin's Estate v. Commissioner, 201 F.2d 576 (6th Cir.1953), the second case on which the Estate of Park court relied. The Goodwin's Estate court, however, was not called on to interpret 26 U.S.C. § 2053(a)-(b) in its current form. Instead, that decision interpreted a portion of a predecessor statute, which provided:
 
 
 23
 For the purposes of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate--
 
 
 24
 ....
 
 
 25
 (b) Expenses, losses, indebtedness, and taxes. Such amounts--
 
 
 26
 ....
 
 
 27
 (3) for claims against the estate,
 
 
 28
 ....
 
 
 29
 as are allowed by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered....
 
 
 30
 26 U.S.C. § 812(b)(3), quoted in Goodwin's Estate, 201 F.2d at 579 n. 1.
 
 
 31
 The Goodwin's Estate court faced the question of whether the estate could deduct payments that it made to creditors who had asserted claims against the estate. There was no question raised in that case as to whether those payments qualified as "amounts for claims against the estate." The only issue in Goodwin's Estate was whether those claims were allowable under state law. Thus, the court did not consider the question of whether state or federal law governs the determination of whether an expense is an "amount for claims against the estate." Estate of Park's reliance on Goodwin's Estate was inappropriate for the proposition that the determination of whether an expense qualifies as an administration expense is a matter solely of state law.
 
 
 32
 The Commissioner argues that the statutory phrase "administration expenses" is not self-defining, and that the treasury regulation in question provides a permissible construction of the statute to which we must defer. We agree. In Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., the Supreme Court held:
 
 
 33
 When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 34
 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (citations omitted).
 
 
 35
 The structure of 26 U.S.C. § 2053(a) compels a two-part test for deductibility of expenses under that statute. First, an expense must be one of the four types of expenses specifically enumerated in the statute. If an expense qualifies as one of those four types, it must further be "allowable by the laws of the jurisdiction ... under which the estate is being administered." 26 U.S.C. § 2053(a). We agree with the Commissioner that the phrase "administration expenses" is neither self-defining nor unambiguous. Moreover we find that the Treasury Regulation's construction of that phrase to include only those expenses "actually and necessarily[ ] incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it," 26 C.F.R. § 20.2053-3(a), is a permissible construction of the statute. We are therefore bound by that construction.
 
 
 36
 Our decision is consistent with the decisions of all the other circuits, with one possible exception,[1] that have considered this issue. See Estate of Love v. Commissioner, 923 F.2d 335, 337 (4th Cir.1991); Marcus v. DeWitt, 704 F.2d 1227, 1229-30 (11th Cir.1983); Hibernia Bank v. United States, 581 F.2d 741, 744-45 (9th Cir.1978); Estate of Smith v. Commissioner, 510 F.2d 479, 482-83 & n. 4 (2d Cir.1975); Pitner v. United States, 388 F.2d 651, 659 (5th Cir.1967) ("In the determination of deductibility under section 2053(a)(2), it is not enough that the deduction be allowable under state law. It is necessary as well that the deduction be for an 'administration expense' within the meaning of that term as it is used in the statute, and that the amount sought to be deducted be reasonable under the circumstances. These are both questions of federal law and establish the outside limits for what may be considered allowable deductions under section 2053(a)(2).").
 
 
 37
 B. Necessity of the Claimed Administration Expenses
 
 
 38
 The Tax Court held that the costs of maintaining Ripplestone after March 16, 1990, were not allowable administration expenses under Ohio law. Our decision today imposes an additional requirement that expenses must meet in order to be deductible as administration expenses, but does not alter the statutory requirement that such expenses must be allowable under applicable state probate law. Therefore, affirmance would be required if the Tax Court's analysis of this issue were correct. Unfortunately, we find that the factual record is not sufficiently clear for us to determine this issue. Therefore, we must remand the case to the Tax Court for further factual development and application of the correct standard as set forth above.
 
 
 39
 The Tax Court, relying on Ohio Rev.Code § 2113.36 and Union Commerce Bank v. Commissioner, 3 Ohio Misc. 189, 339 F.2d 163, 168 (6th Cir.1964), found that Ohio law allows only those administrative expenses that are necessary, reasonable, and just. Ohio Rev.Code § 2113.36 provides: "Allowances ... which the probate court considers just and reasonable shall be made for actual and necessary expenses and for extraordinary services not required of an executor or administrator in the common course of his duty." The Tax Court held that maintenance of Ripplestone was not necessary because Trust B held assets other than Ripplestone worth $9,026,540.75 at the time of Marguerite Millikin's death. The Tax Court held that Ripplestone should have been transferred to Trust C, rather than being maintained by the executor and Trust B's trustee.
 
 
 40
 The estate does not challenge the Tax Court's holding that Ohio law allows only necessary administration expenses. The estate argues, however, that maintenance of Ripplestone and the resulting costs were necessary to administer the estate properly. In particular, the estate claims that it was necessary for it to delay the final distribution of Trust B's assets pending an audit of the estate that it reasonably believed to be inevitable. The estate contends that an audit was nearly certain in light of the large size of the gross estate (just under $23 million) and the uncertainty inherent in valuing Ripplestone. It argues that Ripplestone, in particular, had to be maintained in Trust B because that trust contained only $220,822 in other assets immediately after the estate filed its estate tax return. That amount, the estate claims, was an insufficient reserve against the possibility of a tax deficiency assessment.
 
 
 41
 The estate's theory, if supported by the facts concerning the amount of available resources and the uncertainty of the tax situation, may be meritorious. Several state probate courts have approved the reservation of assets against the possibility of a tax audit and a deficiency assessment. See Wolfe v. Turner, 267 Md. 646, 299 A.2d 106, 112-13 (1973); Hartman v. Burford (In re Estate of Miller), 259 Cal.App.2d 536, 66 Cal.Rptr. 756, 766 (1968); In re Raumann's Estate, 64 N.Y.S.2d 373, 381 (N.Y.Surr.Ct.1946); see also George Gleason Bogert, The Law of Trusts and Trustees § 272 (rev.2d ed. 1992) ("Normally distributions of income or principal from the decedent's estate will be delayed at least until debts, expenses and death taxes have been paid, often until the estate is closed, especially where there are contingent liabilities or the final amount of the federal estate tax payable is not known until that time."); 34 C.J.S. Executors and Administrators § 509 (1942) ("Before making a final or partial distribution of an estate, the personal representative is entitled or may be ordered to retain in his hands sufficient assets to meet contingent or disputed legacies or disputed or undue claims against the estate."). In addition, Ohio Rev.Code § 2113.88 provides, in part:
 
 
 42
 (A) The fiduciary may withhold from any property distributable to any person interested in the estate the amount of tax attributable to the person's interest....
 
 
 43
 (B) If the property held by the fiduciary is distributed prior to final apportionment of the tax, the distributee shall provide a bond or other security for the apportionment liability....
 
 
 44
 That a distributee may be required to post bond for a distribution prior to final tax apportionment suggests that, at least absent such bond, Ohio law may allow an executor to retain assets pending final determination of the amount of estate taxes.
 
 
 45
 We express no opinion on the necessity of the estate's retention of Ripplestone, however, because the factual record is not sufficiently developed to allow us to resolve that issue. The Commissioner disputes the estate's claim that Trust B contained only $220,822 in assets other than Ripplestone after the estate filed its tax return. We are unable to resolve this dispute on the record before us. In addition, the estate conceded at oral argument that Trust B's trustee disbursed income from its securities to Trust C. The current record is inadequate to determine the number and amount of those disbursements, or whether they were required under Trust B's terms. All of these factors are relevant to proper resolution of the estate's claim that it was necessary to reserve Ripplestone against potential tax liability. Remand is therefore required.
 
 III. CONCLUSION
 
 46
 An expense is deductible pursuant to 26 U.S.C. §§ 2053(a)(2) & 2053(b) only if it is both an "administration expense," as the Treasury Regulation defines that phrase, and an expense that is allowable in the jurisdiction where the estate is administered. Because the Tax Court applied a different test for deductibility and because the facts are not sufficiently developed for us to apply the proper test on the record before us, we VACATE the Tax Court's opinion and REMAND for further proceedings.
 
 
 
 [1]
 Estate of Jenner v. Commissioner, 577 F.2d 1100 (7th Cir.1978), can be read to hold that deductibility of administration expenses is governed solely by state law. Indeed, at least one other circuit appears to have read Estate of Jenner in that manner. See Estate of Love v. Commissioner, 923 F.2d 335, 337 n. 6 (4th Cir.1991). That is not the only possible reading of that case, however. In fact, the Estate of Jenner court quoted the Treasury Regulation restriction on administration expenses with apparent approval, Estate of Jenner, 577 F.2d at 1105, but concluded that "[b]ecause Illinois laws ... only permit executors to sell estate assets when it is necessary for the proper administration of the estate, ... the probate court's approval of the account constitutes an implicit finding of the 'necessity' of the sale," id. at 1106 (internal quotation marks omitted). Only when it turned to the separate issue of whether state court determinations of the reasonableness of claimed expenses are binding on the Commissioner did the Estate of Jenner court cite Estate of Park with approval and provide the analysis which could be viewed as an endorsement of the Estate of Park holding. Id