T.C. Memo. 1998-456


UNITED STATES TAX COURT


ESTATE OF MARGUERITE S. MILLIKIN, DECEASED,
QUENTIN ALEXANDER, EXECUTOR, AND SEVERANCE A. MILLIKIN
TRUST B, SOCIETY NATIONAL BANK, F.K.A. AMERITRUST
COMPANY, TRUSTEE, Petitioners v. COMMISSIONER OF
INTERNAL REVENUE, Respondent*


Docket No. 9928-93.              Filed December 29, 1998.


Robert E. Glaser, for petitioners.

Dennis G. Driscoll, for respondent.

---

* This case is before the Court on remand from the U.S.
Court of Appeals for the Sixth Circuit. Estate of Millikin v.
Commissioner, 125 F.3d 339 (6th Cir. 1997) (en banc), vacating
106 F.3d 1263 (6th Cir. 1997); revg. and remanding T.C. Memo.
1995-288; and overruling Estate of Park v. Commissioner, 475 F.2d
673 (6th Cir. 1973), revg. 57 T.C. 705 (1972), on which we relied
in Millikin v. Commissioner, supra.

SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined that the Estate of Marguerite S. Millikin (the estate) has an estate tax deficiency of $682,367 and that the Severance A. Millikin Trust B (Trust B) is liable for a generation-skipping transfer tax of $67,529.  As then required by Estate of Park v. Commissioner, supra, we applied Ohio law to decide whether petitioners[1] could deduct expenses for Federal estate tax purposes.  Estate of Millikin v. Commissioner, T.C. Memo. 1995-288.  We held that the estate could deduct costs until March 16, 1990, to maintain Ripplestone, a 150-acre estate that had been decedent's home, but that it could not deduct costs to maintain or sell Ripplestone after March 16, 1990.

The estate and Trust B appealed.  The Court of Appeals for the Sixth Circuit overruled its opinion in Estate of Park v. Commissioner, supra, and held that the estate must satisfy both the Secretary's estate tax regulations and Ohio law to deduct costs of maintaining and selling Ripplestone.  Estate of Millikin v. Commissioner, 125 F.3d at 344-346.  The Court of Appeals for the Sixth Circuit did not decide whether the expenses to keep and sell Ripplestone after March 16, 1990, were necessary

_____

[1] References to petitioners are to the estate and its executor and to Trust B and its trustee.  References to decedent are to Marguerite S. Millikin.

administration expenses, how much Trust B distributed to Trust C, or whether the trust agreement required Trust B to distribute those amounts. Id. at 345.

On remand, the issue for decision is whether it was necessary for Trust B to hold Ripplestone after March 16, 1990, to ensure that it could pay decedent's estate tax. We hold that it was not. Thus, the expenses to maintain and sell Ripplestone after March 16, 1990, were not necessary administration expenses. We conclude that the estate may not deduct expenses to maintain and sell Ripplestone after March 16, 1990.

The parties filed briefs and supplemental stipulations of fact after the Court of Appeals for the Sixth Circuit remanded this case. Petitioners asked for oral argument if we are inclined to disallow the claimed deductions. We conclude that oral argument is not necessary to decide the issue before us.

Unless otherwise noted, section references are to the Internal Revenue Code in effect during the time relevant to this case. Rule references are to the Tax Court Rules of Practice and Procedure.

## I.  FINDINGS OF FACT

We incorporate by reference our findings of fact in Estate of Millikin v. Commissioner, T.C. Memo. 1995-288, except for those which the parties agree should be modified. Some additional facts have been stipulated and are so found.

A.   Petitioners

Decedent lived in Ohio when she died on June 18, 1989.  She was the surviving spouse of Severance A. Millikin, who died in 1985.  On November 19, 1987, decedent executed her will, in which she left the residue of her estate to her inter vivos trust.  Quentin Alexander (Alexander) is executor of decedent's estate and Society National Bank, formerly Ameritrust Co. (Ameritrust), is trustee of the Millikin trusts.

B.   The Millikin Trusts

In 1976, decedent's husband named Ameritrust trustee for three trusts which he established.

1.   Trust A

Decedent's husband established a charitable trust known as the Severance A. and Marguerite S. Millikin Endowment Fund Trust A (Trust A).

2.   Trust B

Decedent's husband established the Severance A. Millikin Trust B (Trust B) as a marital deduction trust.  Under his will, Ripplestone was transferred to Trust B on May 7, 1986, to be held by Trust B for decedent's benefit as long as she wanted to live there.

Decedent had a general power of appointment for all Trust B property, including Ripplestone.  If decedent did not fully exercise her power of appointment, any unappointed Trust B

property was to be transferred to a residuary trust known as the Severance A. Millikin Trust C (Trust C) when decedent died. Trust B and/or Trust C were to pay all expenses necessary to maintain Ripplestone during decedent's life. The trust document required the trustee to distribute all Trust B property according to decedent's will.

Decedent's will required Trust B to pay all Federal and State death taxes attributable to the inclusion of Trust B in her gross estate.

### 3.   Trust C

Decedent's husband established Trust C to benefit some of his and decedent's relatives. When decedent died, Trust C was to be divided into three equal shares to be held in trust for the benefit of the issue of three named relatives of decedent's husband. Each of the three shares was to be held for the issue of the three relatives per stirpes. Trust C had 28 beneficiaries.

## C.   Ripplestone

Ripplestone had about 150 acres on which were buildings including a 7,900-square-foot stone main house, a detached three-car garage with apartments, a stone pool house, a gate house and stable, a chauffeur's cottage, and an old farmhouse with a barn. The main house had a large living room used as a gallery to display an extensive art collection.

Ripplestone had six underground fuel storage tanks which had leaked and contaminated soil near the farmhouse and soil and groundwater near the garage apartments.  Developers wanted, but were unable, to subdivide Ripplestone into lots that were smaller than five acres.  There was substantial local opposition to subdividing Ripplestone.  Petitioners did not know about the environmental or zoning problems until after the estate filed the estate tax return.

D.   Trust B's Assets When Decedent Died

Ameritrust, as trustee for Trust B, held title in trust to Ripplestone.  Trust B held assets which had a fair market value of $11,433,458.03 when decedent died on June 18, 1989, including Ripplestone with a fair market value of $2.4 million and stock, Treasury Bills, and an investment trust with fair market value of $9,033,458.03.  When decedent died, Trust B had accrued liabilities of $41,935.34, which were for trustee's fees.

Decedent's gross estate included the property held by Trust B because it was subject to her general power of appointment.  Sec. 2041(a).  However, the property held by Trust B was not a probate asset and was not subject to claims against decedent's estate.

E.    Administration of Decedent's Estate

When decedent died, her estate consisted primarily of jewelry and an extensive collection of European paintings and furniture and oriental porcelains.

The Probate Court of Cuyahoga County, Ohio, probated decedent's will.  Decedent's will directed that her jewelry be sold and that the proceeds be distributed to charities.  The art objects were to be offered to the Cleveland Museum of Art, which had the right of selection.  The balance was to be sold, and the proceeds were to be distributed to charities.  Decedent's will required that her estate pay her estate and death taxes.  Decedent's will required Trust B to pay to her estate the amount certified by Alexander to the Trust B trustee to be the difference between the estate taxes with Trust B included in the gross estate and the estate taxes without Trust B.

In her will, decedent partially exercised her power of appointment over Trust B by appointing $2 million to Trust A and by requiring Trust B to pay to her estate $4,581,645.04 in Federal and Ohio estate and death taxes attributable to the inclusion of Trust B in her estate.  In her will, decedent also authorized her executor to sell any of her estate's assets as he deemed necessary without obtaining the approval of any court or person.

Alexander and the trustee decided to sell Ripplestone as soon as possible after decedent's personal property in Ripplestone was distributed. Decedent's estate paid expenses to maintain and preserve decedent's personal property and Ripplestone. The Cleveland Museum of Art selected the items it wanted, and the estate sold the remaining personal property in February or March 1990.

F.   Appraisals and The Estate Tax Return

Shortly after decedent died, the trustee of Trust B commissioned an appraisal to estimate the fair market value of Ripplestone as of July 19, 1989. On July 28, 1989, Ripplestone was appraised at $3.7 million as of July 19, 1989. The appraiser assumed that Ripplestone could be subdivided and that Ripplestone was free of materials that would present an environmental risk. Those assumptions were incorrect.

The estate filed its Federal estate tax return on March 16, 1990, and paid Federal and State taxes. Decedent's estate reported on its Federal estate tax return that the value of Ripplestone was $3.2 million. Decedent's estate deducted $213,541.82 for maintenance and upkeep of Ripplestone and $150,000 for costs it estimated it would incur to sell Ripplestone. Ripplestone was listed for sale on March 20, 1990, for $4,200,000.

The trustee of Trust B commissioned an appraisal to estimate the fair market value of Ripplestone as of November 22, 1991.  On December 9, 1991, Ripplestone was appraised at $3 million as of November 22, 1991.  Like the earlier appraisal, the appraiser incorrectly assumed that Ripplestone could be subdivided and that Ripplestone was free of materials that would present an environmental risk.

As of the date of trial, it had cost $170,084 to remove the six underground fuel storage tanks from Ripplestone and to remediate the contaminated area.  Trust B gave funds to the estate to pay most of the expenses to maintain and sell Ripplestone.  Decedent's estate reported on its estate tax return that the assets of Trust B were included in the estate. Ripplestone was sold for $2,301,750 on April 20, 1994.  Selling expenses were $142,079.70.

G.   Trust B Receipts, Disbursements, and Distributions

1.   Taxes Paid

On March 16, 1990, Trust B paid generation skipping tax of $1,379,745.66 and Federal estate tax of $3,892,355.31.  On that day, Trust B paid $679,549.92, and the estate paid $9,689.81 for Ohio estate tax pursuant to section 5731.02, Ohio Rev. Code Ann. (Anderson 1996).  On September 8, 1995, Trust B paid an additional $223,019.00 for Ohio estate tax.  Trust B and the

estate remained liable to pay $392,106.34[2] of Ohio estate taxes under section 5731.24 of Ohio Rev. Code Ann. (Anderson 1996) within 60 days after the date of the Federal estate tax closing letter.

2.  Distributions to Trust A

Trust B transferred to Trust A assets with a total fair market value of $2 million on June 7 and 12, 1990.  Following the $2 million transfer to Trust A, Trust B had only cash or cash equivalents and Ripplestone.

3.  Receipts

The estate filed its estate tax return on March 16, 1990. From that date to December 31, 1993, Trust B had $333,395 in income as follows:

| Year | Interest | Dividends | Total |
|------|----------|-----------|-------|
| 1990 | $194,193 | $44,083 | $238,276 |
| 1991 | 55,234 | | 55,234 |
| 1992 | 40,085 | | 40,085 |
| | | | 333,595 |

Trust B transferred the following amounts to Trust C:

| Year | Interest | Dividends | Total |
|------|----------|-----------|-------|
| 1990 | $176,337 | $40,030 | $216,367 |
| 1991 | 38,518 | | 38,518 |
| 1992 | 23,385 | | 23,385 |
| | | | 278,270 |

---

[2] This amount is the difference between the regular Ohio estate tax under sec. 5731.02 of the Ohio Rev. Code Ann. (Anderson 1996) of $679,549.92 and the $1,071,656.26 State estate tax credit reported on line 15 of Form 706.

H.    Notices of Deficiency

Respondent issued the notices of deficiency in this case on February 25, 1993.  In the notices, respondent determined that the value of Ripplestone was $3.7 million, the amount for which it was appraised on July 28, 1989, rather than $3.2 million, the amount that the estate reported on the estate tax return.

II.    OPINION

A.    Background

Petitioners contend that they may deduct from the value of the gross estate the costs to maintain and sell Ripplestone that they incurred after March 16, 1990, under section 2053(b).[3]

1.    Deductibility of the Costs of Maintaining and Selling Ripplestone Under Section 2053(b)

Petitioners may deduct from the value of the gross estate the costs of maintaining and selling Ripplestone after March 16, 1990, under section 2053(b) if (a) Ripplestone is included in the

---

[3] Sec. 2053(b) provides:

SEC. 2053(b).  Other Administration Expenses.--Subject to the limitations in paragraph (1) of subsection (c), there shall be deducted in determining the taxable estate amounts representing expenses incurred in administering property not subject to claims which is included in the gross estate to the same extent such amounts would be allowable as a deduction under subsection (a) if such property were subject to claims, and such amounts are paid before the expiration of the period of limitation for assessment provided in section 6501.

gross estate, (b) the estate paid the costs at issue, and (c) the costs would be deductible under section 2053(a)[4] if Ripplestone were a probate asset.  Sec. 2053(b); <u>Estate of Millikin v. Commissioner</u>, 125 F.3d at 342.  Ripplestone is included in the gross taxable estate and the estate paid the costs at issue. <u>Estate of Millikin v. Commissioner</u>, 125 F.3d at 342.  Thus, petitioners may deduct the costs of maintaining and selling Ripplestone if those costs would be deductible under section 2053(a) assuming that Ripplestone were a probate asset.

Petitioners contend that the costs at issue would be deductible as administration expenses under section 2053(a)(2) and (b) if Ripplestone were a probate asset.  An expense is deductible under section 2053(a)(2) and (b) if it is both (1) an

---

[4] Sec. 2053(a) provides:

     (a) General Rule.--For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts--
          (1) for funeral expenses,
          (2) for administration expenses,
          (3) for claims against the estate, and
          (4) for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate,
as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

administration expense under section 20.2053-3(a), Estate Tax Regs., and (2) an allowable expense under Ohio probate law (two-part test).  Estate of Millikin v. Commissioner, 125 F.3d at 345-346.

## 2.   Ohio Law

Under Ohio law, an estate may pay administration expenses which are necessary, reasonable, and just.  Ohio Rev. Code Ann. sec. 2113.36 (Anderson 1994); Union Commerce Bank v. Commissioner, 339 F.2d 163, 168 (6th Cir. 1964), affg. in part, revg. in part and remanding 39 T.C. 973 (1963).

## 3.   The Estate Tax Regulations

A decedent's estate may deduct administration expenses from the value of the gross estate if they "are actually and necessarily incurred in the administration of the decedent's estate" and are paid to settle an estate and to transfer the property of the estate to the beneficiaries or to a trustee. Sec. 20.2053-3(a), Estate Tax Regs.[5]  The parties agree that the

---

[5] Sec. 20.2053-3(a), Estate Tax Regs. provides in part:

The amounts deductible from a decedent's gross estate as "administration expenses" * * * are limited to such expenses as are actually and necessarily incurred in the administration of the decedent's estate; that is, in the collection of assets, payment of debts, and distribution of property to the persons entitled to it. The expenses contemplated in the law are such only as

(continued...)

expenses at issue were actually incurred.  Expenses necessarily incurred to preserve or distribute the estate are deductible. Sec. 20.3053-3(d)(1), Estate Tax Regs.  Necessarily incurred expenses include the cost to store or maintain property if it is impossible to distribute that property immediately to the beneficiaries.  Id.  An estate may not deduct expenses for a longer period than the executor reasonably needs to retain the property.  Id.  Expenses that are not essential to the proper settlement of the estate, but are incurred for the individual benefit of heirs, legatees, or devisees may not be deducted. Sec. 20.2053-3(a), Estate Tax Regs.

Expenses to sell estate property are deductible only "if the sale is necessary in order to pay the decedent's debts, expenses of administration, or taxes, to preserve the estate, or to effect distribution."  Sec. 20.2053-3(d)(2), Estate Tax Regs.

B.  Burdens of Proof

Respondent determined in the notice of deficiency that the value of Ripplestone was $3.7 million.  The estate deducted more

---

[5](...continued)
attend the settlement of an estate and the transfer of the property of the estate to individual beneficiaries or to a trustee * * *. Expenditures not essential to the proper settlement of the estate, but incurred for the individual benefit of the heirs, legatees, or devisees, may not be taken as deductions. * * *

than $212,000 to maintain Ripplestone and estimated that it would have expenses of $150,000 to sell Ripplestone. Respondent challenged these deductions after respondent issued the notice of deficiency. These issues are new matter for which respondent bears the burden of proof. Rule 142(a).

Petitioners seek to deduct more than the $362,000 the estate deducted on its return. Petitioners bear the burden of proof with respect to Ripplestone expenses in excess of $362,000. However, we do not rely on the burden of proof to decide this case.

C.    Contentions of the Parties

We first consider whether petitioners satisfy the requirements in the estate tax regulations. Expenses incurred after March 16, 1990, to maintain and sell Ripplestone must be necessary to the administration of the estate for the estate to deduct them under Federal law. Petitioners contend that the estate may deduct those expenses under section 20.2053-3, Estate Tax Regs., because the executor and trustee needed to maintain Ripplestone after March 16, 1990, and then to sell it to pay taxes required as a result of decedent's exercise of her power of appointment in her will. Petitioners contend that the estate did not distribute Ripplestone to Trust C when decedent died because petitioners believed that the estate could be liable for

significantly more Federal estate taxes than the estate reported on its return and paid. Petitioners contend that an audit was nearly certain because the gross estate was large (almost $23 million) and respondent could dispute the fair market value of Ripplestone. Petitioners contend that Trust B needed to keep Ripplestone because it had only $220,822 in assets other than Ripplestone after the estate filed its estate tax return, and that $220,822 was not an adequate reserve for its potential tax liability.

Respondent points out that Trust B would have had more than $220,833 in assets other than Ripplestone if Trust B had not distributed some of its interest and dividend income to Trust C. Respondent contends that Trust B was not required to distribute income to Trust C or to keep Ripplestone as a reserve against potential tax liability.

D.    Whether It Was Necessary for Trust B to Hold Ripplestone After March 16, 1990, and Sell It To Ensure That It Could Pay Petitioner's Estate Tax Liability

   1.    Whether the Trust Agreement Required Trust B To Distribute Interest and Dividend Income to Trust C

Under the trust agreement, Trust B's interest and dividend income, Ripplestone, and all of the other Trust B assets which decedent did not appoint to Trust A were treated the same.[6] The

---

[6] The trust agreement provided that when decedent dies, the
(continued...)

trust agreement did not require Trust B to transfer those assets to Trust C before using them to pay or holding them in reserve to pay taxes.  It would have been more practical and economical to keep cash or other liquid assets to pay a potential tax liability rather than real property.

Petitioners contend that respondent stipulated that Trust B had to disburse its income to Trust C.  Petitioners point out that respondent stipulated to a copy of a preprinted part of Trust B's 1991 income tax return, Form 1041, which says "Amount of income required to be distributed currently".  Petitioners contend that respondent stipulated that Trust B had to distribute its income currently to Trust C.

We disagree.  The preamble to the stipulation provides:

It is hereby stipulated that the following statements may be accepted as facts provided, however, that either party may introduce other and further evidence not inconsistent with the facts herein stipulated.

Paragraph 40 of the Stipulation of Facts provides:

40.  Attached and marked as Exhibit 22-V is a copy of the trust income tax return, Form 1041, for the Severence A. Millikin, Trust B for the year ending December 31, 1991.

---

[6](...continued)
trustee shall:  (1) Distribute the corpus of Trust B according to decedent's exercise of her power of appointment as decedent provides in her will; and (2) distribute any unappointed part of Trust B to Trust C.

The parties did not stipulate that the statements in Exhibit 22-V were true.[7]  A stipulation that an exhibit is authentic is not a stipulation to the truth of its contents.  We conclude that the trust agreement did not require Trust B to distribute interest and dividend income to Trust C before distributing Ripplestone, and that respondent did not stipulate otherwise.

   2.   Amount of Cash Trust B Had To Pay Taxes

On June 29, 1990, Trust B had $874,292 in cash or cash equivalents.  Trust B received interest and dividend income and paid it to Trust C as follows:

| Year | Income Received | Income Disbursed |
|------|-----------------|------------------|
| 1990 | $238,276 | $216,367 |
| 1991 | 55,234 | 38,518 |
| 1992 | 40,085 | 23,385 |
| | $333,595 | $278,270 |

Trust B paid $278,270 of income from its securities to Trust C. Trust B would have had $1,152,262 in liquid assets if it had not distributed that income to Trust C.

Petitioners contend that Trust B only had $220,823 in assets other than Ripplestone when the estate filed its Federal estate

---

   [7] By selling Ripplestone and then distributing the proceeds to Trust C, Trust B may have incurred costs that it could have avoided by transferring Ripplestone to Trust C.  The sale of Ripplestone may have benefited the heirs because it meant Trust C did not incur those costs.

tax return.[8]  Petitioners do not include in this amount the $333,595 of income from Trust B assets, such as interest and dividends.  Thus, added to the $220,823, Trust B had a liquid reserve of $554,418 by the end of 1992.

Petitioners contend that Trust B needed a reserve for taxes of at least $749,696, the total of the deficiencies determined in the notices of deficiency.  We disagree.  The deficiency arose because respondent determined that the value of Ripplestone was more than reported by petitioners.  However, when they received the notices of deficiency, petitioners knew that Ripplestone was worth less than its reported value because of ground contamination and zoning problems.

Apparently, when the estate filed the return, the executor did not know of those problems or that the fair market value of Ripplestone was less than the value reported on the estate tax return.  Petitioners will receive a refund from respondent due to the reduced fair market value of Ripplestone regardless of our decision here.

---

[8] Petitioners computed this amount by subtracting $362,106 (alleged by petitioners to be additional Ohio estate tax payable) and $291,363 (administration expenses deducted on the return but not yet paid) from $874,292, which was the fair market value of Trust B's cash and cash equivalents on June 29, 1990.  There is no evidence of the value of Trust B's cash and cash equivalents on Mar. 16, 1990, when the estate filed the estate tax return.

Petitioners point out that it was highly likely that the estate would be audited. However, under the circumstances of this case, this does not mean that it is likely that the estate would be liable for more estate taxes than it reported and paid.

We conclude that the estate did not face a significantly larger tax liability than it and Trust B had paid.

Petitioners contend that Estate of Papson v. Commissioner, 73 T.C. 290 (1979), establishes that the estate can deduct the expenses of maintaining and selling Ripplestone after March 16, 1990. We disagree.

In Estate of Papson v. Commissioner, supra, we held that an estate may deduct as an administration expense under section 2053(a)(2) the commission paid to a broker to obtain a replacement tenant in a shopping center owned by the estate. The primary tenant had left the shopping center after filing for bankruptcy. The estate in that case was unable to pay estate taxes partly because the primary tenant had left. We held that the estate could deduct the cost of replacing the bankrupt tenant because otherwise the estate could not pay the estate taxes.

In contrast, here, the value of Ripplestone was less than the estate had reported, and the estate overpaid estate taxes. Estate of Papson v. Commissioner, supra, does not help petitioners.

3.   Selling Ripplestone Benefited the Trust C Beneficiaries

We believe that a principal reason for selling Ripplestone was not to pay taxes owed by decedent's estate, but to accommodate the 28 beneficiaries of Trust C.  Ripplestone could not readily be divided for distribution to 28 beneficiaries.  As we said in our original opinion, the desire to accommodate those 28 beneficiaries would not make the costs of maintaining and selling Ripplestone deductible by decedent's estate.

E.   Conclusion

An estate may deduct expenses that are necessarily incurred. Sec. 20.2053-3(a), Estate Tax Regs.  Trust B had enough liquid assets, such as income it had received, to pay any potential taxes.  It was not necessary for Trust B to hold Ripplestone after March 16, 1990, and later sell it.  Thus, the expenses of maintaining and selling Ripplestone after March 16, 1990, are not

deductible as administration expenses under section 2053(a) and section 20.2053-3(a) and (d)(2), Estate Tax Regs.[9]

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[9] As a result of this conclusion, under the two-part test established by the U.S. Court of Appeals for the Sixth Circuit in Estate of Millikin v. Commissioner, 125 F.3d 339 (6th Cir. 1997) (en banc), vacating 106 F.3d 1263 (6th Cir. 1997) and revg. and remanding T.C. Memo. 1995-288, we need not decide whether the expenses to keep and sell Ripplestone after Mar. 16, 1990, were necessary administration expenses under Ohio law.